Ernest L. Colucci, J.
These are civil actions brought by the plaintiffs, who are attorneys, against the Village of North Collins, defendant, for the payment of legal fees.
The facts are as follows: On July 3, 1966 one Anthony Alessi was on his way home from a Rod and Gun Club where he had participated in pistol shooting competition. As he was driving *804 through the Village of North Collins, he observed a flashing red light. Being president of the local volunteer fire department he became curious. Upon closer scrutiny, rather than finding a fire, he observed a police car with its light on. It appeared to him that one of the local police officers was having trouble making an arrest. A crowd of people had gathered around the officer and his prisoner and were acting in a menacing manner. The arrest, however, was effected and the police officer took his prisoner to the courthouse which was across the street. One of the bystanders said to Mr. Alessi that it looked like trouble, to go and get the police chief, Joseph Santamaría. The Village of North Collins has a small police force and there was only one officer on duty at the time. Upon arriving at the police chief’s house and explaining the situation to him, the chief deputized Mr. Alessi who had a pistol with him for which he had a permit. They returned to the scene. As Chief 'Santamaría was entering the courthouse where the prisoner had been taken, after Ms arrest, the prisoner Carlos Bodriguez, came running out with Judge Stevens, a local Town Justice in hot pursuit. Judge Stevens upon seeing Chief Santamaría, said, “ Stop that man.” The chief took up the pursuit. The defendant, while fleeing down the street, turned and made an obscene gesture at his pursuers. As the chief started to overtake the defendant he ran into a crowd of approximately 50 people of the same ethnic origin as the defendant. This group facilitated the flight of the defendant and attempted to impede the pursuit of the cMef. Mr. Alessi, who observed this, also observed the prisoner, as he was about to be apprehended, remove from Ms pocket a chain with which he twice struck Chief Santamaría. The chief, then removed his service revolver from its holster and in defense of himself, struck the defendant on the head with the barrel of the weapon. In doing so, the cylinder of the weapon opened and the shells fell upon the sidewalk. At this time there was a crowd of approximately 50-70 people in the immediate area acting in a hostile and menacing manner. Observing this, and being of the opinion that the chief was in imminent danger of harm, Mr. Alessi got out of his vehicle, drew his revolver and told the crowd to stand back. The prisoner was returned to the courtroom and pleaded guilty to an offense.
As a result of this sequence of events, Chief .Santamaría and Mr. Alessi were subsequently arrested and arraigned on an information sworn to by Mr. Bodriguez and another, José Peréz, a member of the crowd, before the other Town Justice charging them with felonious assault. Chief Santamaría and Mr. Alessi *805 subsequently appeared before the Mayor and the Village Board of North Collins. After a full explanation of the circumstances the Village Board specifically authorized them to retain counsel at village expense for their defense. This was done and the evidence produced at a preliminary hearing showed that there was no basis for the charges and they were dismissed. Subsequently, the attorney-plaintiffs in this action submitted vouchers to the Village Board for audit and payment which has been refused. The refusal was based upon an opinion from the Department of Audit and Control of the State of New York.
There are no cases in point by which this court can be guided.
This court, however, does not agree with the opinion expressed by Audit and Control.
It is admitted, in the opinion 11 that a municipality may be liable for the acts of its officers and employees when they are performed within the scope of authority vested in such officers and employees.” The argument is put forth that the police chief and his deputy committed acts which were ultra vires, beyond the scope of their employment, and therefore, the village, not being liable cannot legally use public funds for their defense.
The question then is, were the police chief and his deputy acting within the scope of their employment, when the assaults occurred?
This court is of the opinion that they were.
It was mentioned in the opinion of Audit and Control that a 1 ‘ municipal officer or employee is not hired to commit assault ’ ’. This is only partially true. With regard to a police officer, it is implicit in his charge of office to maintain law and order, even if it involves the use of force. Police officers, by the very nature of their duties, preserving law and order, quite frequently are called upon to commit technical acts of assault in enforcing the law of the community. This was recognized by the State Legislature when they enacted section 246 of the former Penal Law.
Section 246, insofar as it is appropriate states, “Use of force not unlawful in certain cases. To use or attempt, or offer to use, force or violence upon or towards the person of another is not unlawful in the following cases:
1. When necessarily committed by a public officer in the performance of a legal duty; or by any other person assisting him or acting by his direction; * * *
3. When committed either by the party about to be injured or by another person in his aid or defense, in preventing or attempt *806 ing to prevent an offense against his person * * * if the force or violence used is not more than sufficient to prevent such offense ’
The use of force against a person is, therefore, given legal sanction under certain circumstances. Implicit in the section is the proposition that force can serve a public purpose and be in the public interest.
It would appear from the facts that without question a public purpose was being served. Maintaining law and order has always been a primary concern of the public in a democratic society.
In Sun Print. & Pub. Assn. v. Mayor of City of New York (152 N. Y. 257, 265) the following general definition of a public purpose was laid down: “ The purpose must be necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character and authorized by the legislature.”
In any sense is it a meritorious claim from the standpoint of public interest or good government?
The court being of the opinion that the acts engaged in by the chief and his deputy were in the public interest it follows that the determination of the village to aid in their defense is within the scope of its authority. (Village Law, § 89, subd. 11.) It is hereby ordered that the plaintiffs have judgments against the defendant in both causes of action as demanded in the complaints.