SUFFOLK COUNTY PATROLMEN'S BENEVOLENT ASSOCIATION, INC., P.O. Robert Pfeiffer, P.O. Robert Ryan, P.O. Attila Nemes, P.O. Ray Campo, Det. Dennis Romano, P.O. Frank Delgaudio, P.O. Jim Meehan, P.O. Robert Pflaum, P.O. Bill Bennett, P.O. Rodger Larocca, P.O. Howard McAulby, P.O. Ed Fitzgerald, P.O. Sam DeJusus, P.O. Keith Fontana, P.O. Louis Bruno, P.O. Bruce Klimecki, P.O. Philip Buzzanca, P.O. Robert Haisman, P.O. Gerry Gozaloff, P.O. Arthur Dowling, Det. Anthony Bivona, P.O. Donald Berzolla, P.O. Frank Giuliano, P.O. John Niedzielski, P.O. Dennis Green, Det. John Christie, and Det. Frank Pacifico, Plaintiffs,

v.

COUNTY OF SUFFOLK: James O. Patterson, individually and in his official capacity; Martin Ashare, individually and in his official capacity; John P. Finnerty, Jr., individually and in his official capacity; Christopher Termini, individually and in his official capacity, Defendants.

No. 84 Civ. 1846.

United States District Court, E.D. New York.

Oct. 18, 1984.

Harry D. Hersh, DeMartin, Kranz, Davis & Hersh, Hauppauge, N.Y., for plaintiffs.

Robert M. Calica, Reisman, Peirez & Reisman, Garden City, N.Y., for County of Suffolk and James O. Patterson.

John P. Bracken, Bracken & Jacoppi, East Setauket, N.Y., for Termini.

Curtis, Zaklukiewicz, Vasile & Devine, Merrick, N.Y., for Finnerty.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Like a phoenix, this case has risen from the ashes of the decision of the Second Circuit Court of Appeals in *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984), an action brought pursuant to 42 U.S.C. § 1983.[1] In *Dunton*, the plaintiff sought to recover damages against Suffolk County police officer Robert Pfeiffer, Pfeiffer's wife and the County for personal injuries inflicted upon him by Officer Pfeiffer. The Suffolk County Attorney, a defendant here, undertook representation of both Pfeiffer and the County. The County Attorney originally raised the affirmative defense that Pfeiffer was acting in good faith pursuant to his official duties when the incident occurred. However, the Circuit Court found that during the trial, the County Attorney asserted that Pfeiffer acted not as a police officer, but as an "irate husband," when Pfeiffer allegedly committed the acts complained of. The trial resulted in a dismissal against the County and assessment of compensatory and punitive damages against Pfeiffer.

The circuit court held that the County Attorney's assertion that Pfeiffer acted as an irate husband undermined his good faith immunity defense and gave rise to an im-

---

1. By letter dated August 14, 1984, counsel for defendants County of Suffolk, Ashare and Patterson, informed this Court of the possibility that the Second Circuit may rehear argument on the *Dunton* case pursuant to the "Order of the United States Court of Appeals for the Second Circuit Denying the Writ of Prohibition and Granting a Motion to File Out of Time and a Motion to Intervene," No. 84–3058, a copy of which is attached to counsel's letter. As the issues currently before me differ from those before the court in *Dunton,* I find that the potential rehearing of *Dunton* will not affect the instant proceedings.

permissible conflict of interest. The court decided that in such a case, the County is required to provide separate, independent counsel to defend the police officer properly.

This action, brought by the Suffolk County Patrolmen's Benevolent Association ("PBA"), a membership organization, and twenty-six police officers [2] (the "police plaintiffs"), each of whom is currently a defendant in a § 1983 action, alleges that defendants are engaged in a massive and intentional scheme to deprive the police plaintiffs of their rights to a fair trial. Specifically, plaintiffs allege that defendants, while aware that *Dunton*-type conflicts of interest existed in actions where the officers and County were co-defendants, continued to permit members of the Suffolk County Attorney's office to represent both the police officers and the County in § 1983 actions.

Based upon the premise that conflicts of interest warranting separate counsel exist in the twenty-six underlying § 1983 actions against the police plaintiffs, plaintiffs urge that these policemen have an unfettered right to counsel of their choice in those actions, with the cost of such representation to be borne entirely by the Suffolk County Self-Insurance Fund. Plaintiffs assert, as will be further detailed, that by denying the police plaintiffs this right, defendants have violated plaintiffs' constitutional and state law rights to be represented by counsel of their choice.

Jurisdiction in this case is predicated on 42 U.S.C. § 1983, and principles of pendent jurisdiction.[3] Plaintiffs allege nine causes of action as follows: 1) deprivation of a due process property interest, *i.e.*, the right to a proper and independent defense in the underlying § 1983 actions; 2) deprivation

**2.** By stipulation filed May 24, 1984, Det. Dennis Romano withdrew as a plaintiff in this action. *See* Fed.R.Civ.P. 41.

**3.** Plaintiffs also originally alleged federal jurisdiction based on the provisions which permit a private right of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) ("civil RICO"). In their one-paragraph sixth cause of action, plaintiffs asserted simply that because defendants used the United States mail to communicate with the plaintiffs regarding their representation in the claims against them and because those communications were fraudulent as generally averred in the complaint, defendants are civilly liable under the RICO statutes. The only other mention in the complaint of the use of the mails is ¶ 67, which also alleged that on "numerous occasions," defendants used the mails as described above.

When defendants moved to dismiss the several causes of action set forth in the complaint, plaintiffs urged that I stay that portion of the motion to dismiss which addressed the RICO claim pending the Second Circuit's decision on appeal in *Sedima S.P.R.L. v. Imrex Co.*, 574 F.Supp. 963 (E.D.N.Y.1983). The circuit court affirmed my dismissal of Sedima's civil RICO claim and pendent claims during the pendency of these motions. *Sedima S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984) (civil RICO cause of action must allege distinct "RICO-type injury" as well as criminal convictions of defendants arising from predicate acts of RICO). *See also Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984) (upholding dismissal of complaint

which failed to allege "distinct RICO injury"); *Furman v. Cirrito*, 741 F.2d 524 (2d Cir.1984) (reluctantly upholding dismissal of complaint based on *Sedima* and *Bankers Trust*). Following the issuance of the Second Circuit's decision in *Sedima*, plaintiffs withdrew their RICO claim by letter dated August 6, 1984.

While it is now unnecessary for me to address the merits of plaintiffs' withdrawn RICO claim, I feel compelled to note that the allegation of a RICO claim here is the most eloquent statement of the extent to which the RICO statute has been misused and even recklessly pleaded. It defies credulity to believe that Congress intended to encompass within the provisions of the Racketeer Influenced Corrupt Organizations statutes a County Attorney and members of his staff in the discharge of their professional responsibilities. As noted by the Second Circuit in *Sedima*, given the general purpose of RICO to combat organized crime,

the uses to which private civil RICO has been put have been extraordinary, if not outrageous. Section 1964(c) has not proved particularly useful for generating treble damage actions against mobsters by victimized businesspeople. It has, instead, led to claims against such respected and legitimate "enterprises" as the American Express Company, E.F. Hutton & Co., Lloyds of London, Bear Stearns & Co., and Merrill Lynch, to name a few defendants labeled as "racketeers" in civil RICO claims resulting in published decisions.

*Sedima, S.P.R.L. v. Imrex Co., supra,* 741 F.2d at 487 & note 10. The withdrawn RICO claim in the instant case is but another example of the misuse of that statute.

of a due process liberty interest, in that defendants have caused the police plaintiffs to remain defendants in the § 1983 suits much longer than necessary and have deprived the policemen of the right to control their defenses in such actions; 3) denial of equal protection, in that separate counsel is arbitrarily designated for some § 1983 police officer defendants and not for others; 4) breach of the PBA-Suffolk County labor agreement; 5) fraud, in that defendants knowingly failed to disclose to the police plaintiffs conflicts of interest; 6) violations of 18 U.S.C. §§ 1961–1964, the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in that in carrying out the alleged intentional fraudulent dual representation, defendants frequently used the United States mail; 7) breach of fiduciary duty; 8) negligence and legal malpractice in connection with defendants' duty to safeguard the personal and property interests of the officers; and 9) entitlement to a permanent injunction against the actions allegedly taken by defendants. Plaintiffs seek declaratory and injunctive relief, $100 million in damages, and attorneys' fees pursuant to 42 U.S.C. § 1988.

Currently before me are defendants' motion to dismiss the tort claims against the three attorney defendants, and plaintiffs' second, fifth, sixth, seventh and eighth causes of action,[4] as well as plaintiffs' motion for partial summary judgment on the selection of counsel issue. For the reasons set forth herein, partial summary judgment on the selection of counsel issue is granted in defendants' favor. Because I also find that plaintiffs' other federal claims are without merit as hereafter indicated, I am constrained to dismiss them and plaintiffs' pendent state claims as well. *See Dunton v. County of Suffolk, supra,* 729 F.2d at 910–11 (where federal claim is unsubstan-

tial, state claims must be dismissed); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 727, 86 S.Ct. 1130, 1138, 1139, 16 L.Ed.2d 218 (to the same effect). Therefore, the parties' motions are discussed below only as they pertain to plaintiffs' federal causes of action.

*Background*

The procedural history of this case is intertwined with the core issue—the right of the police plaintiffs, in cases where potential conflicts of interest exist, to representation by counsel of their choice at County expense. Simultaneously with the commencement of this action, plaintiffs, by order to show cause, sought a preliminary injunction seeking the following relief: 1) disqualification of the County Attorney as counsel for the police plaintiffs in the underlying § 1983 actions (based on the alleged conflicts of interest); 2) substitution of the PBA's attorneys, the law firm of DeMartin, Kranz, Davis & Hersh ("the DeMartin firm"), as counsel for the police plaintiffs in the underlying actions; and 3) reimbursement for the expense of such representation by the County Self-Insurance Fund.

Insofar as it dealt with disqualification of the County Attorney, plaintiffs' motion for injunctive relief was based upon their charge that the County Attorney could not fairly represent both the County and the defendant police officers (the police plaintiffs here) in the underlying § 1983 actions due to *Dunton*-type conflicts of interest. Prior to oral argument on the motion, at which they vigorously opposed plaintiffs' allegations of misconduct, defendants *voluntarily* withdrew as counsel to the individual officers in the underlying actions. That withdrawal was necessitated by the conflict of interest created by this action, *i.e.,* the clients suing their attorney.[5]

**4.** Because plaintiffs have withdrawn their sixth cause of action, *see supra* note 3, defendants' motion to dismiss that claim is now moot.

**5.** The County Attorney withdrew as counsel for the police plaintiffs in the underlying § 1983 actions by letters stating in identical language: You have commenced an action against the County, John P. Finnerty, Jr., Chris Termini

and myself personally, in which you claim a right to have separate counsel represent you at County expense. Whether or not you are entitled to such representation, the fact that you have commenced an action against us places the County in an adversarial position to you which, in my judgment, warrants the selection of outside counsel.

In response to the County's withdrawal as counsel in the underlying actions, plaintiffs withdrew their motion for a preliminary injunction. However, the representation of the police plaintiffs in the underlying actions still remains an issue in controversy for the following reasons.

First, although the County Attorney communicated to the police plaintiffs that it could no longer represent them, this disqualification is not yet effective and the police plaintiffs currently remain unrepresented in the underlying § 1983 actions. This is due to the requirement of General Rule 3(c) of the Southern and Eastern Districts of New York, which requires a court order to effect withdrawal of counsel of record. At this time, no application for leave to withdraw has been made nor has such an order been issued by the judges before whom the other actions are pending, thus preventing those twenty-six underlying actions from proceeding until the resolution of the instant action.[6]

Second, the core issue of this action, namely, whether the police plaintiffs are entitled to counsel of their choice in conflict situations at County expense, is currently unresolved. Although the parties disagree as to the source of the instant conflict of interest between the County and the individual officers,[7] there is no doubt that such conflict exists.

Assuming that court orders are issued permitting withdrawal of counsel in the underlying actions, *see supra* note 3, the issue of *who* shall represent the officers is vigorously contested by the parties. As has been alluded to and will be further discussed, plaintiffs contend that the individual officers have a right to select their own counsel in any conflict situation. Defendants, on the other hand, urge that although the police officers are entitled to a defense in a § 1983 action at County expense, the County is statutorily permitted to name a panel of attorneys from which each police officer may select one as his counsel. As authority for this position,

---

Pursuant to County Law § 30–1981, I am providing you with the names of three attorneys from whom you may choose one:

    \*    \*    \*    \*    \*    \*

Kindly make your selection and advise this Office in writing within ten days. In the event that no notification is received from you by that time, a selection will be made for you so that your defense will not be compromised.

All of the police plaintiffs, with the exception of Det. Romano, *supra* note 2, rejected the members of the panel designated by the County. The County then informed the officers by letter:

We acknowledge receipt of your letter of May 10, 1984. Your designation of Messrs. DeMartin, Kranz, Davis & Hersh is hereby rejected. We remind you of your duty to cooperate pursuant to Local Law 30 of 1981. In the event that you do not select one of the attorneys on the panel submitted to you in our letter of May 4, 1984 within 10 days of receipt of this letter, we will have no choice but to disclaim coverage with respect to any claim asserted against you which means you will be liable for any compensatory damages imposed against you and your legal fees.

At this time, the County and defendant Ashare have consented to an order temporarily restraining the County from disclaiming representation of the police plaintiffs pending adjudication of the instant motions.

**6.** Local Rule 3(c) provides:

An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit of satisfactory reasons for withdrawal or replacement and the posture of the case, including its position, if any, on the calendar. Due to the interrelationship between this action and each of the twenty-six underlying actions, the parties have until now been unclear as to whether the defendant County Attorney should seek an order or orders relieving him as the attorney of record before me or before each of the judges presiding over the underlying actions. Although it would be expeditious for me to order withdrawal of counsel in each of those actions, considerations of intra-court comity weigh against this and in favor of each judge in the § 1983 actions separately considering whether withdrawal is appropriate. Therefore, I decline to order the County Attorney's withdrawal in the underlying actions and direct him to seek appropriate orders in the courts before which those actions are pending.

**7.** As stated *supra* at 1474, plaintiffs urge that they are entitled to separate counsel in the § 1983 actions due to *Dunton*-type conflicts of interest. Defendants concede that separate representation in those actions is warranted only because of the conflict created by the plaintiffs' instant action against their attorneys.

defendants rely upon Suffolk County Local Law 30 of the year 1981 ("Local Law 30"), entitled "A Local Law to Provide for the Defense and Reimbursement of Legal Fees of County Employees in Connection with Lawsuits Arising Out of the Performance of Public Duties or Responsibilities."[8] Section 3(c) of Local Law 30, which lies at the heart of this dispute, provides that if a County employee is entitled to private counsel based upon a determination by the County Attorney that dual representation would be inappropriate, a court has determined that a conflict of interest exists, or the County Department of law lacks sufficient resources to conduct an adequate defense,

> the County Attorney shall notify the employee in writing of such determination *and shall present to the employee the names of three (3) attorneys for representation. The employee shall then select one (1) of these three (3) attorneys as counsel to be retained by the employee and shall notify the County attorney in writing of such determination.* Reasonable attorney's fees and litigation expenses shall be paid by the County to such attorney employed or retained, from time to time, during the pendency of the civil action or proceeding. Payment of such fees and expenses shall be made in the same manner as other claims and expenses of the County. Any dispute with respect to representation of multiple employees by the County Attorney or by an attorney employed or retained for such purpose, or with respect to the amount of the fees or expenses, shall be resolved by the court.

(emphasis added). Plaintiffs urge that defendants' imposition of the three attorney panel pursuant to § 3(c) of the local law unlawfully restricts a right they assert to

select *any* counsel, at County expense, as allegedly mandated by state law.

Having laid the factual and procedural foundation of this dispute, I now turn to the examination of plaintiffs' federal claims.

### A. *Plaintiffs' Claim Under 42 U.S.C. § 1983*

Plaintiffs' motion seeks partial summary judgment or declaratory judgment ordering defendants to permit the police plaintiffs to be represented by the counsel of their choice in the underlying § 1983 actions at the expense of the County Self-Insurance Fund. Plaintiffs assert that they have a due process property interest in such reimbursed representation based on sections 50–j and 6–n of New York's General Municipal Law, section 39 of the "Agreement between Suffolk County, N.Y. and the Suffolk County Patrolmen's Benevolent Association, Inc., January 1, 1983—December 31, 1985" ("the PBA—County Agreement" or "the Agreement"), and New York common law. Defendants do not deny that plaintiffs may select counsel of their choice in § 1983 actions when a conflict exists. Rather, defendants urge that plaintiffs are only entitled to separate representation *at County expense* as provided in Section 3 of Local Law 30.

As stated by the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), property interests are

… not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or undertakings that secure certain benefits and that support claims of entitlement to those benefits.

---

8. The Legislative Findings upon which Local Law 30 are based are set forth in section 1 of the statute as follows:

> This Legislature hereby finds that municipal employees are currently obligated to bear the legal expenses incurred in defense of allegations of misconduct in office. This potential financial burden discourages highly-qualified people from seeking and/or accepting employment with the County of Suffolk. This

> Legislature intends to exercise its power to enact legislation authorizing it to defend its officials who, in the future, may be charged with violating the law in the performance of their duties. The cost of such defense is to be deemed additional remuneration necessary to encourage and induce highly-qualified people to accept employment with the County of Suffolk.

*Id.* at 577, 92 S.Ct. at 2709. In assessing whether plaintiffs have a property interest, "the initial question is whether the property interest asserted by the plaintiffs is one to which they have 'a legitimate claim of entitlement' secured by existing laws, rules, or customs, rather than simply 'an abstract need or desire.'" *Heese v. De-Matteis Development Corp.*, 417 F.Supp. 864, 870 (S.D.N.Y.1976), *citing Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709; *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ Moreover, the Supreme Court has been reluctant to label as a constitutionally protected property right a claim that would be adjudicated as a matter of state law but for the fact that the defendant is a public official acting under color of law. *Paul v. Davis*, 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) (respondent's allegations of deprivation of property and liberty did not rise to a constitutional level where he would have had only a state action for defamation were petitioner not a state actor). The plaintiffs do not have any property interest in reimbursed representation of their choice that is secured by more than an abstract need or desire which would support an action under § 1983.

*Applicable Statutes and Agreements*

■ At the outset I must note that the authority for defendants' application of Local Law 30 to plaintiffs is questionable. By its very terms, Local Law 30 limits its beneficiaries. The statute provides in pertinent part:

*Section 6. Beneficiaries*

The benefits of this Law shall be extended to an employee of a negotiating unit for which an agreement has been negotiated pursuant to Civil Service Law, Article 14, *only if such agreement expressly so provides.*

(emphasis added). As pointed out by plaintiffs, article 14 of the Civil Service Law, entitled Public Employees' Fair Employment Act ("PEFEA"), sets forth the statutory authorization for collective bargaining agreements in the public sector. The PBA—County Agreement is a PEFEA agreement, *see* Agreement, § 1, and it does *not* contain the express language referred to in section 6 of Local Law 30. Therefore, by its very terms, Local Law 30 cannot be applied to plaintiffs.[9] Unless, however, plaintiffs have some legally cognizable right to reimbursed representation of their choice, defendants may not be deemed to

---

**9.** This is so notwithstanding defendants' assertion that the Second Circuit expressly declared Local Law 30 applicable to Suffolk County police officers in *Dunton, supra*. Defendants rely on the following language of the *Dunton* court:

By local law, Suffolk County provides for the representation of its employees sued under Section 1983.

729 F.2d at 906.

Municipalities commonly provide counsel for their employees and themselves when both municipality and employee are sued. The Suffolk County Attorney's representation of Officer Pfeiffer here was mandated by statute. *See* Suffolk County Local Law No. 30 (1981)....

*Id.* at 907. That observation was not necessary to the decision in that case and the Court may not have deemed it necessary, therefore, to carefully parse the words of the local law.

Plaintiff's contention that Local Law 30 is inapplicable to them is supported by the fact that express language required by article 6 *is* incorporated in other PEFEA agreements negotiated before the current PBA—County Agreement. As examples thereof, plaintiffs have submitted excerpts from labor contracts between the County and C.S.E.A. White Collar Unit # 2 and Blue Collar Unit # 6, which state in identical language: "The County confirms in this agreement that Local Law 30–1981 shall apply to employees covered by this Contract." Declaration of Michael A. Mahoney, Exhs. B and C.

Even if Local Law 30 were expressly applicable to plaintiffs, the use of the County Self-Insurance Fund monies to pay for the defense of *individual officers* in § 1983 actions is questionable. This is so because N.Y.Gen.Mun.L. § 6–n (McKinney Supp.1979), which authorizes the development of such a fund, has been interpreted to permit payment of judgments, actions and claims against the municipal corporation (*i.e.*, the County) only and not those against individual officers and employees. Op. State Compt. 81–71.

Notwithstanding the express inapplicability of Local Law 30 to plaintiffs, however, I am compelled to observe that it was *plaintiffs* who originally sought to invoke the benefits of that law in this action. In their complaint at ¶ 16, plaintiffs allege in part: "By ... Suffolk County Law (No. 30 of 1981) ... the County is obligated to provide a proper defense and to indemnify its police employees for Federal claims allegedly committed within the scope of the police officer's County employment."

Note 9—Continued

More significantly, plaintiffs relied on Local Law 30 in their memorandum submitted in support of their withdrawn motion for a preliminary injunction. These plaintiffs contended:

Suffolk County has enacted a local law *which expressly applies as a remedy in this action.* Suffolk County Local Law No. 30–1981 (hereinafter Local Law 30). This law expressly empowers the Court to determine that a conflict of interest precludes the County Attorney from representing an employee, and to order that independent counsel be retained at County Self-Insurance Fund expense.

Brief at 19 (emphasis added). Plaintiffs further stated:

However, plaintiffs fear that the defendants will seek to do indirectly under Local Law 30 that which they are prohibited from doing directly. Plaintiffs do not want the County or County Attorney controlling their defense indirectly through patronage appointed defense counsel. It is quite reasonable to assume that patronage appointed defense counsel will be loyal to the County and County Attorney because they have been selected and paid by them. Certainly, if this scheme is allowed to occur, the potential appearance of impropriety, if not actual impropriety, will remain in the picture to taint the judicial proceedings. Section 3e [*sic*] of Local Law 30 on its face appears to permit the County Attorney to select and present a list of three attorneys for final selection as defense counsel by the police employee. However, because this provision is contrary to New York State Common Law, it is *not* controlling. Section 8 and 10 of Local Law 30 expressly state that the law supplements common law and shall *not* be construed to impair or limit any other rights of an employee to a defense provided by any other provision of common law. As previously discussed, under the circumstances at bar and pursuant to the PBA contract, plaintiffs have a right at common law to counsel of their choice at County Self-Insurance Fund expense.

Plaintiffs rights to independent counsel of thie [*sic*] choice at County expense stem and flow from the PBA labor contract and state common law with respect to the obligations of insurers.

*Id.* at 20–21 (emphasis in original).

In light of plaintiffs charge that they are entitled to counsel of their choice because "patronage appointed defense counsel will be loyal to the County," I must note that until recently the DeMartin firm has been the largest beneficiary of outside counsel fees paid by the County Attorney in situations where conflicts of interest have necessitated the retention of separate counsel for police defendants in § 1983 actions. *See* Supplemental Affidavit of Martin Bradley Ashare in Opposition to Plaintiffs' Motion for Partial Summary Judgment. In addition, in exhibits submitted to this Court in conjunction with the underlying motions, a member of the DeMartin firm has stated in the firm's appendix on an appeal to the Second Circuit:

More recently, however, either as an associate or as a partner in a firm, I have been retained either by a municipal insurance company or through a municipal self-insurance program, to exclusively defend individual police officers in the context of Federal civil rights litigation.

Currently I am defense counsel of record to several individual police defendants in a number of State and Federal court actions. In several of these proceedings, *although I function exclusively as defense counsel to the individual police officer,* my fee is being paid by the County of Suffolk self-insurance program.

*Morales v. Stoiber,* No. 83–7381, Appendix to Brief of Defendant-Appellant Michael Applequist at 43a (emphasis added).

Given those facts, the assertions of the plaintiffs' attorneys which raise the spectre of "patronage appointed defense counsel" is inappropriate if not a calculated attempt to mislead. The additional assertion that counsel who would undertake the defense of individual police officers would nevertheless remain loyal to the County and the County Attorney is a serious charge, made without any stated basis, that those attorneys are ignorant of or will not observe the solemn professional responsibilities to their clients.

The alarm being sounded concerning "patronage appointed defense counsel" by plaintiffs' attorneys, who were among the most frequently designated outside counsel by the County Attorney drives me to observe once again, *see Dunton v. County of Suffolk,* 580 F.Supp. 974, 976 (E.D. N.Y.1983), how ironic are the assertions of negligence and malpractice against the County Attorneys made by counsel for these plaintiffs as are the shrill and strident charges of mindless disregard for basic notions of conflict of interest with which the County Attorneys are also charged. In the action which led to the decision by the Court of Appeals for the Second Circuit, *supra,* 729 F.2d 903, which, in turn, spawned these proceedings, the County Attorney *was* mindful of a conflict of interest and by letter dated August 25, 1981, advised the police officer that the County would defend and indemnify him for acts committed in his "official capacity." That letter also specifically informed him that the County was not liable for acts committed outside the scope of his official duties or for punitive damages. The County Attorney suggested to the police officer that he consult with private counsel for additional advice. The police officer followed that advice and consulted with the law firm representing the plaintiffs in this proceeding. On January 15, 1982, this law firm wrote that it would be "monitoring" the action on the police officer's behalf. At no time during the course of that trial did the law firm

have acted improperly in limiting the selection of "reimbursable" counsel offered to plaintiffs. Thus, this opinion examines generally what is, in effect, defendants' authority to limit this selection of counsel, whether by the express terms of Local Law 30 or by implication.

■ Sections 50–j and 6–n of the General Municipal Law do not create the property interest alleged by plaintiffs. Section 50–j, entitled "Liability of police officers for negligence in the performance of duty" provides in pertinent part:

1. Notwithstanding the provisions of any general, special or local law, charter or code to the contrary, every city, county, town, village, authority or agency shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment.

N.Y.Gen.Mun.L. § 50–j (McKinney Supp. 1983). Section 50–j thus establishes a general obligation to indemnify a police officer for torts committed within the scope of his employment. This section has been deemed to permit reimbursement of counsel fees for an officer who has acted within the scope of his official duties. Op.St. Compt. 81–292; Op.St.Compt. 78–965, *citing Gaylord v. Village of North Collins*, 57 Misc.2d 803, 293 N.Y.S.2d 365 (Erie Co. Ct.1968) (prior to enactment of § 50–j, a police officer who used force in making an arrest acted within the scope of official duties and was entitled to reimbursement for legal fees arising from defense of an

action against him for assault, battery or false imprisonment). The statute has not been interpreted, however, to permit officers counsel of their choice. *See also Gaylord, supra* (selection of counsel not addressed).

Section 6–n similarly does not address the selection of counsel issue. That statute permits a municipal corporation to set up a liability and casualty reserve fund, *e.g.*, a self-insurance fund, for the purpose of paying all or part of the cost, including interest, of:

a. Judgments;

b. Actions that have been compromised or settled and that have been approved by the court in which the action or proceeding is pending;

c. Claims that have been settled or compromised and that have been approved by a justice of the supreme court of the judicial district in which the municipal corporation is located;

d. The uninsured portion of any loss to property owned by a municipal corporation if such loss is one for which insurance is authorized pursuant to subdivisions four, five, six, nine, ten, twelve and paragraph (a) of subdivision seven of section forty-six of the insurance law.

e. Expert or professional services rendered in connection with the investigation, adjudgment or settlement of claims, actions or judgments.

N.Y.Gen.Mun.L. § 6–n(9).[10] This statute does not, either expressly or impliedly, address the issue of selection of counsel.

Plaintiff's reliance on the PBA—County Agreement and the New York common law of insurance is based on section 39(a) of the agreement, which provides:

The County shall provide insurance coverage for Employees protecting them

---

raise any question concerning a conflict of interest. This Court did not learn until August 14, 1984 that the County of Suffolk filed no briefs, did not participate in oral arguments and received no notice of the fact that an appeal was taken in that action.

**10.** Subdivision 1(b) of § 6–n states:
"Judgments," "actions" and "claims," as used in this section, shall mean those judgments,

actions and claims against the municipal corporation that are founded upon tort or that arise out of any acts or omissions of officers or employees of the municipal corporation that result in personal injuries or property damage if such officers or employees, at the time the damages were sustained, were executing or performing, or in good faith purporting to exercise or perform their powers and duties.

from legal actions against them which shall include but not be limited to civil suits, false arrest suits, detention or imprisonment, malicious prosecution, libel, slander, defamation or violation of Right of Privacy, wrongful entry or eviction or other invasion of Right of Privacy Occupancy [sic], invasion of Civil Rights, etc., and which shall cover both compensatory and punitive damages on both the State and Federal level. Such insurance coverage shall only be afforded to Employees acting within the scope of their authority and in the proper performance of their duty.

Plaintiffs contend that defendant County is an insurer pursuant to Article 39 of the Agreement, and that as such, the County must reimburse the cost of an independent defense of the plaintiff officers conducted by counsel of the officers' choice.[11] Defendants disagree with plaintiffs' characterization of the County as an insurer, and urge that the County is merely a municipal employer which can act as a self-insurer under Gen.Mun.L. § 6–n. *See Guercio v. Hertz Corp.*, 40 N.Y.2d 680, 358 N.E.2d 261, 389 N.Y.S.2d 568, 571–72 (1976) (self-insurance is not insurance, but an assurance that amounts which a self-insurer is obligated to pay will be paid).

■ Whether the County is or is not an insurer is immaterial to the resolution of the right to counsel issue. The plaintiffs are not entitled to select counsel of their choice at County expense as a matter of New York common law as they claim they are.

**The Insurance Law Analogy**

In support of their claim, plaintiffs cite *Public Service Mutual Insurance Co. v. Goldfarb*, 53 N.Y.2d 392, 425 N.E.2d 810, 442 N.Y.S.2d 422 (1981) and *Hartford Accident & Indemnity Co. v. Village of Hempstead*, 48 N.Y.2d 218, 397 N.E.2d 737, 422 N.Y.S.2d 47 (1979). The plaintiffs cannot derive much comfort from either case.

In *Goldfarb*, the court held that where a conflict of interest arose between the insured and the insurer as to whether a specific claim was covered by the terms of the policy, the insured was entitled to reimbursement for services provided by an attorney of his own choosing. 442 N.Y.S.2d at 427. The insurer's conflict of interest arose in part because the insurer could escape liability altogether if the insured were found liable in damages on some grounds and not on others. *Id.* In the instant case, however, the County is *obligated* by statute and contract to indemnify the police officers for compensatory damages awarded against them in the underlying actions. There is not the slightest suggestion that the question of whether independent counsel may be selected by the insurer was before the court.

The *Hartford Accident* case, *supra*, decided only that New York public policy prohibits municipal indemnification for punitive damages in a § 1983 action. The *Hartford* court also held that the insurer must defend a punitive damages claim through an attorney selected by the defendant officer *or the municipality*. 422 N.Y.S.2d at 54.[12] Thus, *Hartford* does not support plaintiffs' position that only they

---

**11.** Section 39 of the Agreement does not clearly state that the County will reimburse plaintiffs for *legal fees* incurred in defending § 1983 actions. Rather, that section states that the County shall provide insurance coverage "protecting [plaintiffs] from legal actions." Assuming that this language does promise the payment of legal fees, however, this article does not address the selection-of-counsel issue. Additionally, assuming that the *only* source of plaintiffs' alleged right to reimbursed representation of their choice is article 39, plaintiffs' proper remedy would be a breach of contract action in state court and not an action under 42 U.S.C. § 1983.

**12.** To support this proposition, the *Hartford* court cited *Prashker v. United States Guarantee*

*Co.*, 1 N.Y.2d 584, 136 N.E.2d 871, 154 N.Y.S.2d 910 (1956). In *Prashker,* however, the court did not address designation of counsel by a municipality. *Prashker* held only that if a conflict of interest arose when an attorney defending a claim on behalf of *both* the insured and insurer, the insurer should be entitled to counsel of his choice at cost to the insurer. However, this rule was dictum because no conflict existed at the time of the *Prashker* decision. In addition, the *Prashker* court proposed only that the insured and insurer could not be represented by the *same* counsel in a conflict situation. Here the defendants have conceded that plaintiffs are entitled to separate, independent counsel in such

are entitled to select counsel of their choice at County expense. It is also significant to note that *Hartford* was cited with approval in *Goldfarb* in that portion of the opinion relating to selection of counsel. 442 N.Y. S.2d at 427.

Other New York insurance cases indicate that the right to counsel of the insured's choice in a conflict situation is not absolute. In *Graci v. Denaro*, 98 Misc.2d 155, 413 N.Y.S.2d 607 (Sup.Ct. Queens Co.1979), for example, the conflict of interest originally was not between the insured and the insurer, but between two co-defendants insured by the same carrier. The conflict arose because the co-defendants interposed cross-complaints against one another. Later, however, the co-defendant insureds sought to withdraw the crossclaims and jointly assert defenses against the plaintiff. Holding that a *potential* conflict between the insurer and insureds might arise if liability were found on the part of one of the co-defendants, the Court ruled that "to avoid any possibility of conflict of interest, or even suggestion of any conflict of interest, [each defendant must] be represented by separate counsel, *even if they be chosen and paid for their services by the insurance carrier."* 413 N.Y.S.2d at 609 (emphasis added).

In *Goldberg v. American Home Assurance Co.*, 80 A.D.2d 409, 439 N.Y.S.2d 2 (1st Dep't 1981), the court held that the *insurer* fulfilled its duty to two mutually antagonistic insureds by retaining separate and independent counsel to represent them. Distinguishing *Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 136 N.E.2d 871, 154 N.Y.S.2d 910 (1956), the *Goldberg* court stated:

> Plaintiff's reliance on *Prashker v. United States Guarantee Co.* ... is misplaced. The dictum there that the selection of the attorney should be made by the insured has little relevance here. In that case the insurer was denying the obligation to defend as well as the obligation to pay. Manifestly, a lawyer hired by it might be influenced to demonstrate that the ground for liability was outside the coverage as asserted by the insurance carrier. No such consideration arises here.

439 N.Y.S.2d at 5 (citations omitted). Also, unlike *Prashker*, defendants in the instant case do *not* deny their obligation to defend plaintiffs in conflict situations, or their obligation to reimburse the costs and judgments for compensatory damages in actions where the officers acted in good faith and in the course of their official duties.

*New York State Urban Development Corp. v. VSL Corp.*, 563 F.Supp. 187 (S.D. N.Y.1983), *aff'd*, 738 F.2d 61 (2d Cir.1984), is also helpful to this analysis. In that case, plaintiff NYSUDC commenced an action for damages against VSL. VSL sought to have Northbrook Excess and Surplus Insurance Company defend the NYSUDC suit based upon an insurance policy issued by Northbrook to VSL. After

---

situations, but have limited the selection of such counsel.

*Klein v. Salama*, 545 F.Supp. 175 (E.D.N.Y. 1982) (McLaughlin, J.), cited by plaintiffs, is to the same effect. Although the *Klein* court stated that the insured was entitled to counsel of his choice, that case was substantially different from the one at bar. In *Klein*, the court found that representation of the insured by the insurer's *in house counsel* was inappropriate in a conflict situation. *Id.* at 178. In explaining when an "irreconcilable conflict of interest" would occur, the court stated:

> [W]hen an affirmative act ... of the insured may negate coverage by the policy, the loyalty of any attorney who might defend such action is divided. On the one hand the attorney's duty to the insured is to try to defeat recovery on any ground, on the other his duty to the

insurance company is to defeat recovery only on grounds as might render the insurance company liable.

*Id.* at 179, *citing Parker v. Agricultural Ins. Co.*, 109 Misc.2d 678, 680, 440 N.Y.S.2d 964, 967 (Sup.Ct.N.Y.Co., 1981). Thus, the *Klein* court held that the *same* counsel could not represent both insured and insurer in a conflict situation. In contrast, accepting for the moment plaintiff's insurance analogy, defendants in the present case do not seek to have the same counsel represent both the County and the police officer § 1983 defendants in a conflict situation. They agree that plaintiffs are entitled to separate, independent counsel, and even give plaintiffs a limited degree of choice in selecting such counsel, if plaintiffs seek reimbursement of such representation by the County.

Northbrook refused to do so, VSL impleaded Northbrook, and sought declaratory, injunctive and other relief against the insurer.

After determining that Northbrook was obligated to defend VSL in the suit brought by NYSUDC, the district court considered the issue of designation of VSL's counsel and payment of services rendered therefor. Northbrook had offered to select counsel for VSL by itself or to select counsel from one of five firms which VSL, the insured, designated. VSL had indicated that it wanted to be represented by the same firm as had represented it in prior related proceedings. Thereafter, Northbrook selected a different firm to represent VSL. Although it acknowledged Northbrook's right to appoint independent counsel for it, VSL urged that its former counsel be permitted to appear in addition to the appointed counsel and that Northbrook indemnify VSL for the cost of such representation. 563 F.Supp. at 189.

In rejecting VSL's argument, Judge Sand held that the insurer, Northbrook, acted properly when it designated independent counsel for VSL in a potential conflict situation. The court found that Northbrook was "under a duty to provide only an impartial defense—not to sacrifice its own interests," *id.* at 190 n. 1. Therefore, Northbrook was only obligated to provide and pay for the services of independent counsel—even if designated by the insurer itself—and was *not* obligated to reimburse the fees of VSL's chosen counsel who were engaged in maintaining a "watchful eye" over the litigation. *Id.* at 190. In affirming the district court, the Court of Appeals said:

It is not inherently objectionable to permit an insurer to participate in the selection of independent counsel for the insured as long as the insurer discharges its obligation in good faith and the attorney chosen is truly independent and otherwise capable of defending the insured.... The participation of an insurer in the selection process does not automatically taint the independence of chosen counsel.

738 F.2d at 65–66.

Additional federal authority supports the position that in a conflict situation, the insurer can fulfill its obligations by *either* providing independent counsel for the insured *or* reimbursing the insured for the expense of counsel of his choice. *See American Motorists Ins. Co. v. Trane Co.,* 544 F.Supp. 669, 688 (W.D.Wisc.1982), *aff'd,* 718 F.2d 842 (7th Cir.1983); *Transamerica Ins. Co. v. Keown,* 451 F.Supp. 397, 405 (D.N.J.1978); *All-Star Ins. Corp. v. Steel Bar, Inc.,* 324 F.Supp. 160, 165 (N.D.Ill.1971). *Cf. Lowenstein Dyes & Cosmetics, Inc. v. Aetna,* 524 F.Supp. 574, 579 (E.D.N.Y.1981)[13]

In a motion for summary judgment or partial summary judgment, the judgment sought "shall be rendered forthwith" if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well-settled that even if the party opposing summary judgment has not formally cross-moved for judgment, summary judgment may be granted in its favor. 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2720 at

---

13. The following sentence appears in *Lowenstein,* 524 F.Supp. at 579:

Since it appears that such a conflict may exist, it is appropriate for Aetna to bear the reasonable cost of counsel of plaintiff's choosing. See, *e.g., Penn Aluminum Inc. v. Aetna Casualty & Surety Co., supra; Utica Mutual Ins. Co. v. Cherry,* 45 A.D.2d 350, 358 N.Y.S.2d 519 (2d Dep't 1974), *aff'd,* 38 N.Y.2d 735, 381 N.Y.S.2d 40, 343 N.E.2d 758 (1975).

A critical reading of *Lowenstein, Penn Aluminum,* 61 A.D.2d 1119, 402 N.Y.S.2d 877 (4th Dep't 1978), and *Aetna Casualty* quickly reveals

that in each the insurer contested its obligation to *defend* as well as to pay and looked to *Prashker, supra,* as precedent. For the reasons already indicated, *Prashker* and its progeny is not applicable to this case.

I note also in passing that even in a criminal proceeding, where the defendant has an explicit sixth amendment right to counsel, the defendant is not guaranteed an absolute right to counsel of his or her choice. *Davis v. Stamler,* 650 F.2d 477, 479 (3d Cir.1981), citing *United States v. Ostrer,* 597 F.2d 337 (2d Cir.1979); *United States v. Dolan,* 570 F.2d 1177 (3d Cir.1978).

29–30 & n. 20 (2d ed. 1983). I find that this result is appropriate with regard to plaintiff's § 1983 claim on the selection of counsel issue, and for the reasons advanced, summary judgment is hereby granted in favor of defendants.

### B. *The Remaining Federal Claims*

■ The plaintiffs' remaining federal claims, being predicated upon plaintiffs' invalid assertion that they have a constitutional right to counsel of their choice at County expense, must be dismissed. The police plaintiffs' second claim is that they have been deprived of a liberty interest in that defendants have caused them to remain defendants in the underlying § 1983 suits much longer than necessary and have deprived the policemen of the right to control their defenses in such actions. The Court is aware of the difficulties in defining precisely the term "liberty" guaranteed by the Fourteenth Amendment:

> Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized and as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1971). Cognizant of those difficulties, and of the expansive meaning ascribed to the word, I nevertheless fail to find a liberty interest that has been invaded or of which the plaintiffs have been deprived.

To simply allege that they have been caused to remain defendants in the underlying § 1983 suits much longer than necessary and deprived of their rights to control their own defense smacks of speciousness.

That the police plaintiffs here have been caused to become defendants in suits brought against them under § 1983 is certainly not the result of any conduct, under color of law or otherwise, of these defendants. There is also no indication whatever as to what, if anything, the individual defendants did to cause these policemen to "remain unnecessarily as defendants" (Complaint, ¶ 73) in the underlying § 1983 actions against them. Quite clearly, to the extent that the County may be subjected to liability for compensatory damages caused by the fault of its policemen, it had the absolute right to conduct the defense as it deemed wise. And to the extent that the police plaintiffs might have been subjected to liability for punitive damages, they were free to retain their own counsel at any time and control their own defense to such extent as they deemed wise, necessary or appropriate. For the foregoing reasons, the second claim is dismissed.

■ The plaintiffs' third claim alleges that they have been denied equal protection under law in that the defendants have allowed others similarly situated to have independent defense counsel of their choice at County expense, while intentionally denying the benefit to the individual police plaintiffs here. Equal protection deals with legislative line-drawing and classifications that are irrational. No claim of impermissible legislative line-drawing has been made, and having determined that the police plaintiffs have no legally cognizable property right to independent counsel of their own choice at County expense, this claim lacks merit.

The plaintiffs' remaining claims for breach of contract, fraud, breach of fiduciary duty and negligence and legal malpractice, predicated as they are upon the failed assertion of their right to independent counsel of their choice or upon principles of pendent jurisdiction, must also fail and the complaint is dismissed in its entirety.[14] *See supra* at 1474.

---

**14.** Given my determination of this proceeding, I will not address the recently enacted Ch. 868 L.1984, amending the New York General Municipal Law by adding a new section 50–m, which would permit the County of Suffolk to pay punitive damages levied against its law enforcement officers for conduct within the scope of their employment. It may well be that the legislation

*Conclusion*

For the foregoing reasons, plaintiffs' motion for summary judgment on the selection of counsel issue is denied. However, summary judgment is granted in favor of defendants on that issue. In addition, as discussed above, plaintiffs' purported liberty interest and equal protection claims are without merit. Finally, as plaintiffs have failed to allege any substantial federal claims, their pendent state claims must be dismissed. *Dunton v. County of Suffolk, supra,* 729 F.2d at 910–11. Thus, the complaint is dismissed in its entirety.

SO ORDERED.

would render moot all of the plaintiffs' claims,    assuming they had any merit.