Wisconsin Lime and Cement Company, Appellee, v. N. Anton Hultman and Ben Peterson, Trading as Hultman and Peterson, Appellants.

Gen. No. 40,890.

Burke, J., dissenting.

Opinion filed June 19, 1940. Rehearing denied September 10, 1940.

Cochrane & George, of Chicago, for appellants.

Edward S. Cody, of Chicago, for appellee; David H. Kraft, of Chicago, of counsel.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from a judgment entered in the municipal court wherein suit was instituted by plaintiff in an action in assumpsit against defendants for goods of the value of $1,086.70, claimed to have been sold and delivered by plaintiff Wisconsin Lime Company, to the defendants. The cause was tried before the court without a jury which resulted in a finding in favor of plaintiff for $1,044.93, from which finding and judgment defendants bring this appeal.

From the facts before us it appears that in the year 1933, plaintiff was engaged in the business of selling building materials and the two defendants who were partners were cement contractors; that a building was at that time to be erected to be used as a restaurant by the lessee thereof and said building was to be located at the entrance to a "Century of Progress," a World's Fair which was being held in Chicago; that as a business venture the building and restaurant failed and

thereupon various contractors, subcontractors and materialmen filed liens against the land and building.

The defendants testified substantially that when they had an opportunity to bid on the work to be done on the building· they went first to the representative of the plaintiff company, the credit manager Mr. Custin, and told him what they, the defendants, contemplated doing and asked him to look into the matter and see whether or not they would be justified in doing this cement work; that if they did sign the contract the building was to be the only security which either the plaintiff or the defendants could have and that payment to the plaintiff was dependent upon what money, if any, was received out of the project.

It further appears that pursuant to this conversation plaintiff furnished the defendants with certain materials which were required in the construction of the · building; that subsequently various mechanics' liens were filed and two of these cases were consolidated and brought before this court for review. We refer to the case of *Moulding-Brownell Corp. v. E. C. Delfosse Const. Co.*, 291 Ill. App. 343. In that case after reviewing the entire proceedings, the subject matter of which involved the material used in the construction of the same building as is referred to in the instant case, this court at p. 350, said: ''The entire enterprise has every appearance of being a typical promotional adventure fostered by energetic contractors, for use during a 'Century of Progress,' rather than the usual ordinary contract entered into with owners who desire a building erected for normal purposes during normal times.'' In that case the liens which had been allowed in the trial court were disallowed here with the exception of the architect's lien. The conclusion which we arrived at in that case, as expressed in our opinion as to the character of the enterprise, applies with equal force at this time as it did then. The material was furnished in 1933 and no attempt by suit was made in the instant case to

collect the money therefor from defendants until after five years had expired. The defense in this regard is that the right of action against them, if any ever existed, was barred at the end of five years from the date of the last delivery.

In the instant case a rather unusual situation presents itself. Jaffe, the lawyer for the plaintiff, was also the attorney for the defendants. Defendants went to Jaffe, the lawyer, at the suggestion of the plaintiff, they both having claims against the assignee of the defendants in the mechanics' lien case, being the National Builders Bank. When the money was received by Jaffe on behalf of the defendants, he, without the authority of the defendants, paid some of the money to the plaintiff in the year 1936. Said Jaffe then went on the witness stand as a witness and testified to conversations had with the defendants during the time he was acting as their lawyer, such course having presumably been pursued in an endeavor to stop the running of the statute of limitations. When the case came before the trial court, Jaffe, who also was the lawyer who signed and filed the affidavit of claim upon which the case was tried, withdrew his appearance, although he testified while upon the witness stand that he was still plaintiff's lawyer, had been for 15 years and continued to be plaintiff's lawyer. When objection was made to the testimony of the lawyer Jaffe, it was contended that he should not be permitted under the law to disclose confidential matters obtained while the relationship of lawyer and client existed. This objection was overruled by the trial court.

It appears from the record that the plaintiff is out of business and its accounts are being handled by the lawyer Jaffe. Jaffe stated that he had authority to commence suit on said accounts without getting authority from anyone.

The former credit man of the Wisconsin Lime and Cement Company is now working for the Consumers

Company, and he stated he was not sure whether this account belonged to the Consumers Company or to the plaintiff. He stated that he did not know whether all of the accounts of the Wisconsin Lime & Cement Company had been taken over by the Consumers Company. He indicated that it was never intended that the plaintiff should consider the defendants liable regardless of whether or not they collected their money out of the project.

A lawyer being the principal witness in a case in order to establish a claim against his own client, is unusual. If the law were to permit such procedure, then a lawyer's office would not be a very safe place for a man to go seeking advice as to his legal rights. It would not encourage him to tell the truth to his lawyer and, as has been said many times, such procedure is against public policy.

In the case of *People v. Marcofsky,* 219 Ill. App. 230, the court at p. 232, said:

''Professional communications between attorney and client are privileged communications which the law on the ground of public policy excludes for the reason that greater mischiefs would result from permitting their admission than from rejecting them. These communications are excluded not on account of any particular importance which the law attributes to the business of legal professors, but out of regard to the interests of justice which cannot go on without the aid of men skilled in the law. . . . Greenleaf on Evidence, sec. 238. . . . *People v. Barker,* 56 Ill. 299; *Wood v. Thornly,* 58 Ill. 464; *Lanum v. Petterson,* 151 Ill. App. 36; *Hatton v. Robinson,* 31 Mass. 416.''

Counsel for plaintiff, however, succeeded in convincing the court that this privilege is one which belongs to the lawyer and if the latter does not see fit to exercise it his client is helpless, and the court ruled accordingly.

In the case of *People ex rel. Shufeldt v. Barker,* 56 Ill. 299, the Supreme Court at p. 300, said:

"We know of no exception to the rule, that Communications made to a counselor, attorney or solicitor, when made to him in the character of a legal adviser, are to be protected, as the privilege of the party asking the advice. The rule is founded on principles of public policy. It has been found necessary to the protection of persons surrounded and embarrassed by difficulty, to the end that they may have the advice and counsel of persons skilled in the law, upon a complete disclosure of all that pertains to the transaction that affects their interest, property or liberty, with the full assurance that the communications thus made are as safe with their legal adviser as within their own breasts. The courts will never compel, or even allow, an attorney to disclose facts thus communicated to him by his client."

Continuing at p. 302, the court said: " . . . it would unquestionably have been in better taste for the respondent to have declined to testify, unless compelled to do so by the court. The position of an attorney thus situated is a delicate one, and if any doubt existed or could exist, in the mind of any reasonable man, as to the propriety of his giving testimony under the circumstances, he ought at least to have submitted the question to the court for its advice."

The attorney's action in making payment of the money from one client to another and then for said attorney to seek to create a liability against his client the defendant and in favor of the plaintiff, by his testimony, cannot be countenanced. Said attorney should not have been permitted to so testify and the objections relative thereto should have been sustained. Such holding eliminates the only testimony tending to prove the plaintiff's cause of action. We think the statute of limitations was not tolled, by such unwarranted actions on the part of Jaffe, and for that reason was a complete defense to plaintiff's claim. Not alone was the statute itself a complete defense, but the whole case shows that

our conclusion in the former case, *Moulding-Brownell Corp. v. E. C. Delfosse Const. Co.*, 291 Ill. App. 343, was correct. It was not, as we have stated before, an ordinary business project, but when this building was erected it was an adventure on the part of the materialmen and contractors, dependent upon the success, if any, achieved during the "Century of Progress" World's Fair held in Chicago.

The burden of proof was upon the plaintiff to establish its case by a preponderance of the evidence and this it has failed to do. We believe the manifest weight of the evidence is in favor of defendants, and for the reasons herein given the judgment of the municipal court is reversed and judgment is entered here in favor of defendants and against plaintiff for costs.

*Judgment reversed and judgment here in favor of defendants and against plaintiff for costs.*

HEBEL, J. concurs.

MR. JUSTICE BURKE dissenting: The burden was upon the defendants to prove by a preponderance of the evidence the defense that the action was barred by the statute of limitations. I am satisfied that they wholly failed to do this, and that, to the contrary, the evidence convincingly establishes that the running of the statute of limitations was tolled. The documentary evidence, the circumstances and the testimony all combine to make it clear that the partial payment to plaintiff on the account was made by defendants voluntarily. It cannot be denied that the defendants accepted the remittance statement and check. Under all the circumstances shown, this certainly constituted the acceptance by them of a payment on account. I am also of the opinion that the evidence establishes an "account stated" between the parties which had the effect of removing the bar of the statute of limitations. I do not agree with my colleagues in their statement as to the testimony of attorney Jacob H. Jaffe, who testified in behalf of plaintiff. None of his testimony related to

"confidential" matters imparted to him in the course of legal advice and did not violate the rule of privilege in communications between client and attorney. It is the law that where an attorney acts for both sides, with the consent of the parties, the rule of privilege in communications does not apply in a controversy arising between the parties so represented. The rule as to privilege does not apply as to communications made by the client either prior to the retainer or subsequent to the termination thereof. Furthermore, since the defendants themselves testified as to the communications which they claim are privileged, they must be deemed to have waived the alleged privilege in relation thereto. The burden was upon defendants to establish that the alleged communications were privileged, and the trial court correctly decided that the communications were not privileged. The trial judge had a better opportunity than this court to hear and see the witnesses, and his findings should stand, unless they are against the manifest weight of the evidence. In my opinion, the trial court correctly decided the case and the judgment should be affirmed.