STUART C. GOLDBERG, Appellant-Respondent, v AMERICAN HOME ASSURANCE COMPANY, Respondent-Appellant.

First Department, May 19, 1981

**APPEARANCES OF COUNSEL**

*Ronald C. Goldfarb* of counsel *(Goldfarb & Bate*, attorneys), for appellant-respondent.

*John P. Walsh* of counsel *(Warren A. Herland* and *David R. Hornig* with him on the brief; *Donovan, Maloof, Walsh & Kennedy*, attorneys), for respondent-appellant.

FEIN, J.

Plaintiff was insured under a professional malpractice liability insurance policy issued by defendant to plaintiff's former law firm, Sitomer, Sitomer & Porges. As an associate of that firm, plaintiff had been assigned to prepare a registration statement and prospectus for the public offering of stock by a client, for filing with the Securities and Exchange Commission (S.E.C.). Some time after the filing of the registration statement, plaintiff learned that his firm's fee arrangements, which had been incorporated in the statement, were falsely indicated, based on misrepresentations to him by the partners of the firm. After unsatisfactory explanation from the partners, plaintiff reported this information to the S.E.C. and resigned from the firm. The partners were ultimately suspended from practice as a consequence of action by the S.E.C.

The client then sued plaintiff, as well as the partners, in Federal court, alleging negligence and malpractice in filing the false registration statement. Through privately retained counsel, plaintiff answered, asserting affirmative claims against the client as well as the partners of his former firm. He then requested defendant to take over his defense, or more precisely, to underwrite his defense through private counsel of his own choosing so as to avoid what plaintiff termed a "conflict of interest" for defendant, which was already actively defending plaintiff's former associates under the same policy.

It was clear that defendant was under no obligation to represent plaintiff in his counterclaim against the client and his cross claim against his former associates. Defendant did, however, offer to undertake plaintiff's defense in the Federal action, while refusing to reimburse him for representation by legal counsel of his own choosing. Defendant insisted on selecting counsel for plaintiff's defense.

Defendant had retained the firm of D'Amato, Costello & Shea to represent the Sitomer firm's former partners, and Joseph A. Bergadano, of the firm of Hart & Hume, was then retained to undertake plaintiff's defense. Defendant advised plaintiff that private counsel could be retained

and associated with Bergadano, but solely at plaintiff's expense.

The entire case was dismissed for lack of Federal jurisdiction after four and a half years of litigation. Plaintiff then brought this action for recovery of $46,455.16 in legal fees expended for his private counsel. A first cause of action asserted that denial of such a claim by defendant was a breach of the contract of insurance. A second cause of action sought $46,455.16 in compensatory damages and $500,000 in punitive damages for breach of the attorney-client privilege, charging that Bergadano, through four and a half years of correspondence with defendant, had been communicating the status of the Federal litigation to defendant, and in so doing, Bergadano, unbeknownst to plaintiff, had passed along to defendant confidential information pertaining not just to plaintiff's defense, but also to his affirmative claims against defendant's other insureds. Plaintiff asserted that he should at least have been entitled to courtesy copies of all such correspondence between Bergadano and defendant.

On motions by both parties for summary judgment, Special Term denied plaintiff's motion, granted defendant's motion to the extent of dismissing the first cause of action only, and severed the second cause of action for trial. Plaintiff appeals the dismissal of his first cause of action, and defendant cross-appeals to the extent that dismissal of the second cause of action was denied.

■ As to the first cause of action, it must first be noted that plaintiff, albeit entitled to be furnished with or reimbursed for the cost of a legal defense, had no right to reimbursement for legal fees on his affirmative claims against his former partners. Defendant's obligation to both plaintiff and its other insureds stemmed from the insurance policy, which provided for a legal defense. This was made clear to plaintiff at the outset.

■ Second, there was no conflict of interest. Not every potential conflict of interest demands separate representation for each party insured under a policy (see *Oda v Highway Ins. Co.*, 44 Ill App 2d 235, 248). Here, separate and independent counsel were retained to represent the

divergent interests of defendant's insureds. The record reveals a vigorous defense by Mr. Bergadano in service to his client, culminating in the ultimate dismissal against plaintiff. It is noted that plaintiff was lavish in his praise of Bergadano's representation on several occasions. The retention of separate, independent counsel fulfilled defendant's initial obligation to its mutually antagonistic insureds *(Hoffman v Allstate Ins. Co.,* 21 Misc 2d 583; *Yeomans v Allstate Ins. Co.,* 130 NJ Super 48, 54). As *Hoffman (supra)* emphasizes, this was the insurer's right under the policy. The dangers of a divided loyalty exist, irrespective of whether the attorney is selected by the insured or the insurer, where as here the insured is also asserting an affirmative claim against his codefendants insured by the same insurer. This provides no basis for rewriting the policy. Plaintiff's reliance on *Prashker v United States Guar. Co.* (1 NY2d 584) is misplaced. The dictum there that the selection of the attorney should be made by the insured has little relevance here. In that case the insurer was denying the obligation to defend as well as the obligation to pay. Manifestly, a lawyer hired by it might be influenced to demonstrate that the ground for liability was outside the coverage as asserted by the insurance carrier. No such consideration arises here. Moreover, the result demonstrates there was no conflict.

As to the second cause of action, Bergadano's communications were not a breach of an attorney-client relationship. Bergadano continued to represent plaintiff in his defense under the policy, and plaintiff retained private counsel on his affirmative claims (first Lawrence M. McKenna of the firm of Wormser, Kiely, Alessandrini, Mahoney & McCann, and subsequently Harry Youtt of the firm of Thal & Youtt). As noted above, the extent of Bergadano's efforts on behalf of his client is clear from the record. Inasmuch as Bergadano was acting as counsel not only for plaintiff insured but also for defendant insurer in defending the Federal claim against plaintiff, it was only natural that Bergadano provide periodic status reports to the client paying his fee *(Liberty Mut. Ins. Co. v Engels,* 41 Misc 2d 49, affd 21 AD2d 808). Although the better practice might be to provide plaintiff with courtesy

copies of all of these communiqués, there was no obligation to do so. There was no violation of privilege. As *Liberty Mutual* holds, when an attorney acts for two different parties having a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties *(Wallace v Wallace,* 216 NY 28; 8 Wigmore, Evidence [McNaughton rev, 1961], § 2312). This is especially the case where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer *(Shafer v Utica Mut. Ins. Co.,* 248 App Div 279; *Car & Gen. Ins. Corp. v Goldstein,* 179 F Supp 888, affd 277 F2d 162).

Plaintiff's complaint is, in essence, that some of the information passed along by Bergadano to defendant was pertinent not only to his defense, but also to his affirmative claims, and that this information was useful to defendant in assisting in preparation of its defense on behalf of the partners. While it is inevitable that the lines of communication with regard to defendant's co-ordination of defenses in the legal actions against plaintiff and its other insureds would merge at an apex somewhere in defendant's claims office, it does not necessarily follow that the information provided in confidence by Bergadano to defendant was used in defending plaintiff's claim against the partners. In fact, defendant took steps to assure the independence and confidentiality of the separate branches of the litigation involving each of its insureds. To insulate these branches from each other, defendant assigned one claims examiner (O'Shaughnessy) to supervise its in-house co-ordination of plaintiff's defense (represented by Bergadano of Hart & Hume), and another claims examiner to act as co-ordinator for that portion of the litigation involving defenses of the company's other insureds, the former partners of the firm (represented by the D'Amato firm). Each claims examiner maintained a separate file on his portion of the case, and was cautioned not to communicate the contents of his file with his counterpart.

Plaintiff is not specific as to what information in Berga-

dano's letters was used against him, and how. Defendant concedes that Bergadano did report on several occasions plaintiff's adamant attitude against an over-all settlement of the entire case. This fact was certainly pertinent to resolution of the O'Shaughnessy-monitored branch of the litigation, and thus should not be viewed as privileged in any way. Beyond that allegation, plaintiff has not demonstrated a triable issue of fact as to any breach of attorney-client privilege contained in Bergadano's communications to defendant. Nor is there any showing of even nominal damage.

The order, Supreme Court, New York County (HUGHES, J.), entered January 31, 1980, which denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment only to the extent of dismissing the first cause of action, should be modified on the law to the extent of granting defendant's cross motion to dismiss the second cause of action, and otherwise affirmed without costs.

MURPHY, P. J., SANDLER, SULLIVAN and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on January 31, 1980, modified on the law to the extent of granting defendant's cross motion to dismiss the second cause of action, and otherwise affirmed, without costs and without disbursements.