(No. 70958

WASTE MANAGEMENT, INC., *et al.*, Appellants, v. INTERNATIONAL SURPLUS LINES INSUR-ANCE COMPANY *et al.*, Appellees (Matthew W. Cockrell, Contemnor-Appellant).

*Opinion filed May 20, 1991.—Modified on denial of rehearing September 30, 1991.*

CALVO, J., took no part.

Joseph V. Giffin, Frank K. Heap and Lawrence M. Kite, of Bell, Boyd & Lloyd, of Chicago, for appellants.

Pretzel & Stouffer, Chrtd., of Chicago (Robert Marc Chemers, Robert J. Franco, Michael A. Clarke, Scott O. Reed, Andrew G. Witik, James P. Moran, Mark D. Roth and Michael E. Prangle, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, Waste Management, Inc., and Chemical Waste Management, Inc. (insureds), and Matthew Cockrell (Cockrell), legal counsel for insureds, appeal from certain discovery orders and a finding of contempt for noncompliance with those orders.

## BACKGROUND

International Surplus Lines Insurance Company and American Risk Insurance Company (insurers) issued certain policies of insurance (EIL policies) to insureds. The policies provide indemnity to insureds for defense costs for any claim arising out of an environmental impairment brought against insureds by third parties. Insurers' duty to indemnify is subject to certain exclusions and conditions, including insureds' duty to cooperate. Addi-

tionally, the policies provide insurers the right, but not the duty, to defend such a claim.

Insureds owned and operated five hazardous waste disposal sites which were the subject of several lawsuits. The current case involves only the litigation with respect to the site located in Furley, Kansas (the Miller litigation). In the Miller litigation, which was commenced in January 1982 in the United States District Court for the District of Kansas, the plaintiffs alleged that insureds were responsible for personal injury and property damage arising from the migration of toxic wastes.

During the pendency of the Miller litigation, on October 1, 1982, prior owners of the Furley, Kansas, site filed suit against insureds (the Nunn litigation). Insureds counterclaimed, alleging negligent design, construction and operation of the site. Insureds obtained a judgment against the prior owners in the amount of $10,675,342.17 and subsequently settled with certain of the prior owners for $1,500,000.

Insureds retained counsel, defended and settled the Miller lawsuit. Pursuant to the EIL policies, insureds subsequently sought indemnification from insurers for $2,150,000 in settlement costs and $850,000 in defense costs. Insurers denied coverage.

## FACTS

Both insureds and insurers filed declaratory judgment actions seeking a determination of their respective rights and liabilities under the polices. The actions were consolidated. In their complaint, insureds alleged that they had performed all of their obligations and conditions precedent under the terms of the EIL policies. Further, insureds alleged that the settlement and defense costs incurred in the Miller litigation were reasonable and that the settlement was necessary. Additionally, insureds alleged that insurers had received advance notification of

the settlement and agreed not to contest its reasonableness.

In their answer, insurers denied coverage, and further denied that insureds had met all of their contractual obligations and conditions precedent. Insurers admitted sending a letter to insureds agreeing not to contest the Miller settlement, but asserted that the letter was "based on information then known to it." In their complaint, insurers alleged that one reason for their denial of coverage for the Miller litigation was insureds' failure to advise them of the Nunn litigation. This, insurers maintain, constituted a breach of the cooperation clause and other conditions of the policy.

During discovery, insurers requested production of defense counsel's files in the underlying Miller and Nunn litigations. (134 Ill. 2d R. 214.) Insureds produced some of the requested documents from the Miller litigation, but withheld certain others, claiming attorney-client and work-product privileges. None of the Nunn litigation files were produced. Insureds provided the court with a detailed log of the withheld documents.

The court ordered production of the Miller litigation files, but denied insurers' request for production of the Nunn files. Cockrell, in order to perfect an appeal to the appellate court, refused production of the additional files from the Miller litigation. He was held in contempt and fined $100. (134 Ill. 2d R. 219(c).) Both parties appealed to the appellate court, first district.

The appellate court, in a unanimous decision, affirmed in part and reversed in part the circuit court's order to produce the Miller litigation files; reversed the order denying production of the Nunn litigation files; and ordered an *in camera* inspection of all requested documents. (203 Ill. App. 3d 172.) We granted insureds' petition for leave to appeal (107 Ill. 2d R. 315). We affirm in part and reverse in part.

Two issues are presented for our review: (1) whether jurisdiction is proper and (2) whether attorney-client privilege or the work-product doctrine may bar discovery of the attorney's files in the underlying lawsuits. The parties have agreed that resolution of the privilege issues regarding the documents generated in connection with the Miller litigation will govern the parameters of production for defense documents from all sites involved in the coverage litigation.

## JURISDICTION

Insurers first contend that this court is without subject matter jurisdiction to hear Cockrell's appeal. They point out that the contempt order was levied against Cockrell, not insureds, yet the notice of appeal was filed on behalf of insureds, not Cockrell. Therefore, insurers argue, the contempt order is not properly before us and further, since discovery orders are not final and appealable, this court lacks jurisdiction.

Our Rule 303(c) provides for the form and content of the notice of appeal. (134 Ill. 2d R. 303(c).) Notice of appeal serves the dual purpose of vesting the reviewing court with jurisdiction (*Dunaway v. Ashland Oil, Inc.* (1989), 189 Ill. App. 3d 106, 110; *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 104), and informing the prevailing party that the unsuccessful litigant seeks review by a higher court (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433). Thus, notice must necessarily specify the judgment or part thereof from which the appeal is taken (134 Ill. 2d R. 303(c)(2)), and accordingly, a reviewing court has jurisdiction solely over those issues properly raised in the notice (*Smock v. Hale* (1990), 197 Ill. App. 3d 732, 737; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 815). It is our preference that cases presented for our review be resolved on the merits, and to that end, notice requirements are given a lib-

eral construction (*March v. Miller-Jesser, Inc.* (1990), 202 Ill. App. 3d 148, 157). Mere technical defects in form, as opposed to substance, are deemed not fatal. *Burtell*, 76 Ill. 2d at 434.

We have reviewed the notice of appeal in this case. The notice states, *inter alia,* that the insureds appeal from the September 11, 1989, order which found Cockrell, counsel for plaintiffs, in contempt of court for his refusal to comply with the court's August 25, 1989, order to produce certain documents. Although Cockrell is not formally named in the caption portion of the notice, insurers were adequately apprised that Cockrell and insureds were seeking review of the contempt finding as well as the underlying discovery order. Further, review of the contempt finding necessarily requires review of the order upon which it is based. (See *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 174.) Insurers claim no prejudice as a result of insureds' apparent inadvertent omission of Cockrell's name in the notice and we perceive none. The defect is merely technical. Jurisdiction is proper.

## ATTORNEY-CLIENT PRIVILEGE

Both attorney-client privilege and work product are provided for in our Rule 201(b)(2) (134 Ill. 2d R. 201(b)(2)). However, they are separate and distinct protections and waiver of one does not serve as waiver of the other. Therefore, we will address each separately.

Insureds first contend that discovery of the Miller and Nunn litigation files is barred by the attorney-client privilege. Contrarily, insurers argue that the privilege is inapplicable. Prior to addressing the arguments of the parties, we set out the applicable rule. Rule 201(b)(2) provides, in pertinent part:

"(2) *Privilege* \*\*\*. All matters that are privileged against disclosure on the trial, including privileged com-

munications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." 134 Ill. 2d R. 201(b)(2).

"The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 117-18.) However, the privilege is not without conditions, and we are mindful that it is the privilege, not the duty to disclose, that is the exception. (*Consolidation Coal*, 89 Ill. 2d at 117-18.) Therefore, the privilege ought to be strictly confined within its narrowest possible limits. Further, the attorney-client privilege is limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such. (*Consolidation*, 89 Ill. 2d at 119; McCormick, Evidence §91, at 217 (3d ed. 1984).) Finally, we note that in Illinois, we adhere to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit. *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 359.

Initially, insurers urge that the attorney-client privilege does not apply here because the files are "at issue" in the declaratory judgment action. Insureds urge that should this court adopt a mere relevancy standard, the privilege will be meaningless. The appellate court agreed with insurers and premised its holding on this basis. We note that the parties have devoted the major portion of their briefs to a thorough discussion of the "at issue" exception.

Indeed, it is the very conduct of defense counsel in the underlying litigation which is the basis of insurers'

declaratory judgment action and its defense to insureds' declaratory judgment action. We therefore agree that defense counsel's litigation files in the underlying cases are relevant and at issue in the present declaratory judgment action. However, as we discuss more thoroughly below, the attorney-client privilege has no application in this case. Therefore, it is of no moment that the files are relevant, and further analysis of the "at issue" exception would only be superfluous.

Insurers advance two other arguments in support of their claim of entitlement to the files, either of which are dispositive. Since we find both arguments to be equally significant, we will address each. Insurers first argue that, in light of the cooperation clause in the insurance policy, the attorney-client privilege is unavailable. Insureds offer no compelling arguments to defeat this contention. We agree with insurers.

The scope of the duties imposed upon an insurer and its insured are defined and controlled by the terms of the insurance contract. Any condition in the policy requiring cooperation on the part of the insured is one of great importance (*Schneider v. Autoist Mutual Insurance Co.* (1931), 346 Ill. 137, 139), and its purpose should be observed (*M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill. 2d 492, 496). The basic purpose of a cooperation clause is to protect the *insurer's interests* and to prevent collusion between the insured and the injured party. (See *M.F.A. Mutual Insurance Co.*, 66 Ill. 2d at 496; *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338; 8 J. Appleman, Insurance Law & Practice §4771, at 213 (West 1981).) Additionally, the very principles of law which govern contracts generally apply with equal force to contracts of insurance. (*Zitnik v. Burik* (1946), 395 Ill. 182, 186.) Finally, where the provisions of the policy are clear and unambiguous, it is the duty of the court to enforce them according to

their plain meaning. *Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 371.

The cooperation clause in this case imposes upon insureds the duty to assist insurers in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to insureds. Further, the policy provides that insurers are entitled to conduct any claim, in the name of insureds, for indemnity or damages against persons, and that insureds "shall give all such information and assistance as the insurers may reasonably require."

Here, the cooperation clause imposes a broad duty of cooperation and is without limitation or qualification. It represents the contractual obligations imposed upon and accepted by insureds at the time they entered into the agreement with insurers. In light of the plain language of the cooperation clause in particular, and language in the policy as a whole, it cannot seriously be contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy.

Prior to leaving this argument, we address one additional point. Insureds maintain that the purpose of the cooperation clause was mooted once the underlying lawsuit was terminated. We disagree. Insureds' duty to cooperate concerning matters covered by the insurance agreement did not end with the termination of the underlying lawsuit, but rather continues for as long as insureds seek to enforce its terms, and certainly to the point when insurers were requested to perform their end of the bargain. The fact that the parties are now adverse concerning the interpretation of such terms does not negate insureds' contractual duty.

A fair reading of the terms of the contract renders any expectation of attorney-client privilege, under these

circumstances, unreasonable. We conclude that the element of confidentiality is wanting and, therefore, the attorney-client privilege does not apply to bar discovery of the communications in the underlying lawsuits.

We find insurers' second basis for their entitlement to the litigation files equally compelling. They maintain that under the common interest doctrine the attorney-client privilege is unavailable to insureds. While we have found no Illinois cases which have presented like facts, we are persuaded by the wealth of authority which supports insurers' position. See *International Insurance Co. v. Peabody International Corp.* (N.D. Ill. 1988), 1988 U.S. Dist. Lexis 5109; *Truck Insurance Exchange v. St. Paul & Marine Insurance Co.* (E.D. Pa. 1975), 66 F.R.D. 129; *Southeastern Pennsylvania Transportation Authority v. Transit Casualty Co.* (E.D. Pa. 1972), 55 F.R.D. 553; *Shapiro v. Allstate Insurance Co.* (E.D. Pa. 1968), 44 F.R.D. 429; *Mitchum v. Hudgens* (Ala. 1988), 533 So. 2d 194; *Goldberg v. American Home Assurance Co.* (1981), 80 A.D.2d 409, 439 N.Y.S.2d 2; *Liberty Mutual Insurance Co.* (1963), 41 Misc. 2d 49, 244 N.Y.S.2d 983.

Evidence scholars have variously stated that under the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §505.7, at 277 (5th ed. 1990); McCormick, Evidence §91, at 219 (3d ed. 1984); 8 J. Wigmore, Evidence §2312, at 603 (McNaughton rev. 1961).) This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer. *Goldberg*, 80

A.D.2d at 413, 439 N.Y.S.2d at 5; see also 55 A.L.R.4th 336 (1987).

Clearly, here both insurers and insureds had a common interest either in defeating or settling the claim against insureds in the Miller litigation. We believe that the communication by insureds with defense counsel is of a kind reasonably calculated to protect or to further those common interests.

Insureds argue that the common interest doctrine is inapplicable in this case because insurers provided no defense in the underlying suits nor did they participate. We disagree.

In the typical case, where the common interest doctrine has been relied upon to defeat a claim of privilege, the attorney has provided joint or simultaneous representation of the parties. (See *In re Estate of Wahl* (1920), 218 Ill. App. 295; but see *Wisconsin Lime & Cement Co. v. Hultman* (1940), 306 Ill. App. 347; see also 4 A.L.R.4th 765 (1981).) However, we believe that the doctrine may properly be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer. (See *Rogers v. Robson* (1979), 74 Ill. App. 3d 467, 472 (when insurer retains attorney to defend insured, attorney represents both insured and insurer in furthering interests of each); see also *Latronica v. Royal Indemnity Co.* (1956), 8 Ill. App. 2d 337, 343 (in matters of defense and settlement insurer and insured should have common interest).) It is the commonality of interests which creates the exception, not the conduct of the litigation.

On these facts, a less flexible application of the doctrine effectively defeats the purpose and intent of the parties' agreement. Insureds and insurers share a special relationship; they are in privity of contract. In a limited sense, counsel for insureds did represent both insureds

and insurers in both of the underlying litigations since insurers were ultimately liable for payment if the plaintiffs in the underlying action received either a favorable verdict or settlement. To deny discovery in this instance would be to disregard considerations of public policy which require encouragement of full disclosure by an insured to his insurer.

Insureds maintain, since they were seeking neither attorney fees nor settlement costs for the Nunn litigation, those files were not relevant. This position overlooks insurers' interest in any potential recovery for contribution from the prior owners of the site. Moreover, insureds' duty to cooperate with insurers is not limited solely to situations where insureds seek recovery of costs. We believe insurers and insureds shared a common interest in the conduct and outcome of the Nunn litigation as well as in the Miller litigation. Thus, insurers are entitled to the Nunn files.

In sum, insurers' entitlement to production of the files arises out of the contractual obligations and the common interest doctrine. Their right to complete disclosure is not only necessary to proper resolution of the pending lawsuit, but exists irrespective of the now adversarial nature of the parties' relationship. The attorney-client privilege simply has no application in this case. Our holding here does not, in any event, abrogate the privileged nature of communications concerning the present declaratory judgment action.

## WORK PRODUCT

The appellate court held that since the requested documents were not prepared for the present declaratory judgment action, the work-product doctrine was inapplicable. Proper resolution of the issue here presented requires that we engage in a brief review of the doctrine, its origin and the underlying policies.

Our Rule 201(b)(2) sets the parameters for the scope of discovery of work-product materials. It provides, in pertinent part:

"(2) *** *Work Product.* *** Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (134 Ill. 2d R. 201(b)(2).)

The work-product doctrine provides a broader protection than the attorney-client privilege, and is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts. See *Hickman v. Taylor* (1947), 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385.

Illinois has taken a narrow approach to the discovery of attorney work product. The overriding considerations under our discovery rule are ascertainment of the truth and expedited disposition of the lawsuit. (*Monier v. Chamberlain*, 35 Ill. 2d at 361.) Thus, under our rule, ordinary work product, which is any relevant material generated in preparation for trial which does not disclose "conceptual data" (*Monier*, 35 Ill. 2d at 360), is freely discoverable (134 Ill. 2d R. 201(b)(2)). Opinion or "core" work product, which consists of materials generated in preparation for litigation which reveal the mental impressions, opinions, or trial strategy of an attorney, is subject to discovery upon a showing of impossibility of securing similar information from other sources. *Monier*, 35 Ill. 2d at 360.

Insureds argue that the appellate court erroneously created a new exception to the work-product rule. They maintain that the court's holding that the materials are not protected because they were not made in preparation for the present declaratory judgment action conflicts with all recognized authority on the issue from

other jurisdictions. They invite our attention to *In re Murphy* (8th Cir. 1977), 560 F.2d 326, *United States v. Leggett & Platt, Inc.* (6th Cir. 1976), 542 F.2d 655, and *Duplan Corp. v. Moulinage et Retorderie de Chavanoz* (4th Cir. 1973), 487 F.2d 480, which have all uniformly held that the protection applies in subsequent litigation. Insurers distinguish the above cited cases on the grounds that the work product in those cases was not, as it is here, "at issue."

Whether work-product protection extends to subsequent litigation is not provided for in either the Illinois (134 Ill. 2d R. 201(b)(2)) or the Federal rule (Fed. R. Civ. P. 26(b)(3)). Courts faced with the issue have generally, based on various interpretations of the requirements of *Hickman v. Taylor*, answered the inquiry in the affirmative. See, *e.g.*, *Midland Investment Co. v. Van Alstyne, Noel & Co.* (S.D.N.Y. 1973), 59 F.R.D. 134; *Honeywell, Inc. v. Piper Aircraft Corp.* (M.D. Pa. 1970), 50 F.R.D. 117; *Philadelphia Electric Co. v. Anaconda American Brass Co.* (E.D. Pa. 1967), 275 F. Supp. 146; *Insurance Co. of North America v. Union Carbide Corp.* (D. Colo. 1964), 35 F.R.D. 520; *Hanover Shoe, Inc. v. United Shoe Machinery Corp.* (M.D. Pa. 1962), 207 F. Supp. 407. See also Note, *Discovery of an Attorney's Work Product in Subsequent Litigation*, 1974 Duke L.J. 799 (1974); Recent Cases, *Civil Procedure—Discovery—Work-Product Privilege Extends to Subsequent, Unrelated Litigation*, 27 Vanderbilt L. Rev. 826 (1974); 27 A.L.R.4th 568 (1984).

We need not belabor the point. This case simply does not fit within the parameters of either *Hickman v. Taylor* or our Rule 201(b)(2). As we have stated, one of the underlying policy considerations in *Hickman* and Rule 201(b)(2) is the protection of the adversarial process.

In the typical case, material is generated in preparation for trial against an adversary who may seek disclo-

sure of his opponent's work product. Here, the sought-after materials were, in the first instance, prepared for the mutual benefit of insureds and insurers against a third-party adversary. Insurers were not the adversary from whom the attorney's trial strategies and opinions required protection. Insurers and insureds have only become adversarial since the termination of the primary litigation. While the work-product materials, had they been requested by the third-party opponent in the underlying lawsuit, would have been entitled to protection, that same protection is not warranted here. This, we firmly believe, was not the situation contemplated by *Hickman* and Rule 201(b)(2). We note here that work product generated in preparation for the pending declaratory action is entitled to protection.

We have considered cases in which the information sought after in the subsequent litigation was prepared by the attorneys in an earlier action for the mutual benefit of subsequently adverse parties. (See, *e.g., Bourget v. Government Employees Insurance Co.* (D. Conn. 1969), 48 F.R.D. 29; *Kirkland v. Morton Salt Co.* (N.D. Ga. 1968), 46 F.R.D. 28; *Chitty v. State Farm Mutual Automobile Insurance Co.* (E.D.S.C. 1964), 36 F.R.D. 37; *LaRocca v. State Farm Mutual Automobile Insurance Co.* (W.D. Pa. 1969), 47 F.R.D. 278 (good cause not shown); *Henke v. Iowa Home Mutual Casualty Co.* (1958), 249 Iowa 614, 87 N.W.2d 920.) At issue in those cases is the conduct of the attorney in the earlier case. In some cases where discovery has been permitted, the rationale has been that the material sought would be dispositive of the issues raised in the subsequent suit, and therefore, the requisite showing of need and good cause to defeat the work-product protection was satisfied. (See, *e.g., Bourget,* 48 F.R.D. 29; *Kirkland,* 46 F.R.D. 28; *Chitty,* 36 F.R.D. 37; but see *LaRocca,* 47 F.R.D. 278 (good cause not shown).) In *Henke,* the court held that

the work-product doctrine did not apply. See also *Chitty*, 36 F.R.D. at 40 (in *dicta*, court stated *Hickman* not controlling under factual situation presented).

Insurers maintain that at issue here is, *inter alia*, whether certain clean-up costs in the Miller action were covered by the EIL policies, and why certain parties were brought in for contribution and others released. Insureds take the position that the information requested by insurers may be gleaned from objective facts, contained outside the contents of defense counsel's files. We disagree.

Part of what insurers seek to discover is in fact the mental impressions and case assessment of defense counsel. We can think of no source, outside the files, where this information might be obtained. The sought-after information will be dispositive of the issues presented in the declaratory action. Therefore, we hold that the opinion work-product materials are subject to disclosure.

Moreover, the underlying policy considerations of the work-product doctrine are not eroded by our holding here. Insureds here seek to use the doctrine's protection in a manner that is inconsistent with the purpose and intent of the rule. The unavailability of the protection, under these particular circumstances, in no way contravenes the interest in promoting the adversarial process, and in fact, the truthseeking process is enhanced. To permit insureds' attorney to invoke the work-product rule as a bar to discovery in this instance would effectively allow the rule to be used as a sword rather than, as intended, a shield.

Even assuming, *arguendo*, that the work-product rule has application here, the material would nonetheless be subject to disclosure. There are emerging, in the Federal decisional law, certain exceptions to "absolute immunity" of opinion work product. One such exception, the "at issue" exception, permits discovery of work product

where the sought-after material is either the basis of the lawsuit or the defense thereof. (See, *e.g., Handgards, Inc. v. Johnson & Johnson* (N.D. Cal. 1976), 413 F. Supp. 926; *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.* (E.D. Pa. 1975), 66 F.R.D. 129; *Bird v. Penn Central Co.* (E.D. Pa. 1973), 61 F.R.D. 43; *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.* (E.D. Wis. 1969), 296 F. Supp. 979.) This "at issue" exception wholly comports with our commitment to full and fair disclosure and furtherance of the truthseeking process.

Application of the exception, on this set of facts, would defeat any claim of work-product protection. Here, as in *Truck Insurance Exchange*, insureds seek to have insurers pay for their defense counsel's services while at the same time claiming that insurers have no right to examine counsel's files. We think that even the seemingly impenetrable work-product doctrine would not permit such unfairness and potential injustice. We hold, where, as in the underlying litigation, an attorney represents the common interests of two or more clients whose relationship subsequently becomes adverse, and, in a subsequent action, the work product of the attorney is at issue, Rule 201(b)(2) (134 Ill. 2d R. 201(b)(2)) is not available to bar discovery by one of the original parties.

Insureds argue, citing *Consolidation Coal Co.*, 89 Ill. 2d at 111, that the only instance permitting disclosure of opinion work product is when the party seeking disclosure "demonstrates the absolute impossibility of securing similar information from other sources." Our holding that the work-product rule is not applicable in this case obviates the need for us to consider the argument.

## CONCLUSION

We hold, only, that the attorney-client privilege and work-product doctrine are not applicable to bar disclo-

sure of defense counsel's files in either the Miller or Nunn litigations. The protections are, nonetheless, available to bar disclosure of any communications or materials generated in preparation for the present declaratory judgment action. Therefore, and consistent with this opinion, on remand, the circuit court should conduct an *in camera* inspection of all of the documents and exclude from disclosure those entitled to protection.

For the foregoing reasons we affirm in part and reverse in part the appellate court, affirm in part and reverse in part the circuit court, and remand this cause to the circuit court for further proceedings.

> *Appellate court affirmed in part,*
> *and reversed in part;*
> *circuit court affirmed in part,*
> *and reversed in part;*
> *cause remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.

## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

JUSTICE FREEMAN delivered the opinion of the court:

Petitioners, Waste Management, Inc., Chemical Waste Management, Inc., and Matthew Cockrell (collectively, insureds), have petitioned this court for rehearing (134 Ill. 2d R. 367). While we deny the petition, we will, nonetheless, address those points which we deem to have merit.

Initially, insureds assert that this court's holding that insureds had no expectation of confidentiality with respect to defense counsel's files is based on a misapprehension of fact. Specifically, insureds maintain that the insurance contract provision which states that the insureds "shall give all such information and assistance as

the insurers may reasonably require" is not, in fact, a provision in the Furley insurance contract. Insureds maintain that insurers' assertion that such a provision is included in the contract is erroneous. Appended to insureds' petition are documents, not included as part of the record, which they maintain support their belief that this provision was negotiated out of the Furley site contract. Insureds maintain that the only cooperation clause in the Furley site contract provides that "insureds shall cooperate with the company, and upon the company's request, assist in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to insured ***." For purposes of this discussion, but without determining the issue, we accept as true insureds' version of the contract terms.

Insureds maintain that under the contract the duty to cooperate and to assist exists only when the insurer is actually conducting or participating in the litigation. They state that the contract is silent on "what cooperation is required, *if any*, when the Insurer merely stands by while the Insured defends himself as was done here" (emphasis added). As a preliminary matter, we note that insureds state in their petition that insurers refused to defend. This statement implies that such a duty existed. In fact, insurers had no duty to defend. The contract provides only that insurers indemnify insureds for defense costs.

The position taken by insureds renders the contract's cooperation provision as mere surplusage. We reject this position. Even were the express words, "duty to cooperate," omitted from the contract, such a duty could reasonably be inferred based merely on principles of fairness and good faith.

Having determined that the duty to cooperate exists, we are next faced with the task of determining, in the context of indemnification, its scope. Our review of case

law reveals that issues involving the cooperate-and-assist clause urged by insureds have most often arisen in duty-to-defend cases. Within that context, it has been variously stated that the purpose of the provision is to require the insured to cooperate in good faith with the insurer in its defense of a claim. (8 J. Appleman, Insurance Law & Practice §4774, at 231-33 (1981); *State Farm Fire & Casualty Co. v. First National Bank & Trust Co.* (1972), 2 Ill. App. 3d 768, 772.) The duty to defend and the duty to indemnify, while separate and distinct (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 394), are corresponding in nature. Thus, though insurers had no duty to defend, we will rely upon the principles applied in duty-to-defend cases to define the scope of the duty of cooperation here.

The duty to defend arises when, based on the pleadings, there is a claim that is potentially covered by the insurance agreement. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193.) Where the insurer has the duty to defend, that duty includes the right to assume control of the litigation. (*Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 136.) "The purpose of such right is to allow insurers to protect their financial interest in the outcome of litigation and to minimize unwarranted liability claims." *Parker v. Agricultural Insurance Co.* (1981), 109 Misc. 2d 678, 681, 440 N.Y.S.2d 964, 967; 7C J. Appleman, Insurance Law & Practice §4681, at 2-4 (1979).

Unlike the duty to defend, the duty to indemnify cannot be determined simply on the basis of whether the factual allegations of the underlying complaint potentially state a claim against the insurer. (*C.H. Heist Caribe Corp. v. American Home Assurance Co.* (3d Cir. 1981), 640 F.2d 479, 483.) "The duty to indemnify arises only when the insured becomes legally obligated to pay

damages in the underlying action that gives rise to a claim under the policy." (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 156.) It is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy. *Great West Steel Industries, Ltd. v. Northbrook Insurance Co.* (1985), 138 Ill. App. 3d 84, 97 (Jiganti, P.J., dissenting); *Pacific Indemnity Co. v. Linn* (E.D. Pa. 1984), 590 F. Supp. 643, 650.

Typically the insurer has little or no knowledge of the facts surrounding a claimed loss, while the insured has exclusive knowledge of such facts. The insurer is, therefore, dependent on its insured for fair and complete disclosure; hence, the duty to cooperate. While the insured has no obligation to assist the insurer in any effort to defeat recovery of a proper claim, the cooperation clause does obligate the insured to disclose all of the facts within his knowledge and otherwise to aid the insurer in its determination of coverage under the policy. (*Freyou v. Marquette Casualty Co.* (La. App. 1963), 149 So. 2d 697, 702.) The insurer is entitled, irrespective of whether its duty is to defend or to indemnify, to gain as much knowledge and information as may aid it in its investigation, or as may otherwise be significant to the insurer in determining its liability under the policy and in protecting against fraudulent claims. To hold otherwise effectively places the insurer at the mercy of the insured and severely handicaps it in contesting a claim. *Arton v. Liberty Mutual Insurance Co.* (1972), 163 Conn. 127, 134, 302 A.2d 284, 288.

Where the insurer provides the defense it is directly involved in the generation of the defense litigation files and, obviously, has access to the whole of them. Where the insurer is bound instead to indemnify for the cost of

litigation, it plays a different but no less vulnerable role in the claims process. Thus we do not believe that the insurer, as indemnifier, is relegated to a less secure position with only limited rights to disclosure. The insurer-indemnifier is no less interested or entitled to protect its financial interests and to minimize unwarranted liability claims than if it were actually participating in or providing the defense. We conclude that while the insurance contract may not, as insureds assert, expressly state that insureds have a duty to provide all information and assistance, by our interpretation of the clause no less is required.

Insureds next point out that the rationale for our holding, that is, that the materials were generated while the insureds were defending a claim for which the insurers had the ultimate duty to satisfy, ignores the reality that insurers are denying coverage and a duty to indemnify. Insureds state that insurers made "some" decision between 1982 and 1987 not to pay the claims but nothing was specifically communicated to them until 1987.

Insureds seek to characterize insurers' denial of coverage as a complete surrender of its contractual obligations. We disagree. We note that aside from insurers' pleadings in the declaratory judgment action, insureds point to nothing and our review of the record reveals no express denial of coverage. Further, it is noteworthy that insureds make no allegation that insurers unreasonably delayed in bringing their complaint for a declaratory judgment.

The mere fact that insurers contest coverage does not abrogate their duty to indemnify. It is the purpose of the declaratory judgment action " 'to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations.' " (*Heinson v. Porter* (1989), 244 Kan. 667, 672, 772 P.2d 778, 782, quoting *Franklin Life Insurance Co. v. Johnson* (10th

Cir. 1946), 157 F.2d 653, 658.) The parties involved in the controversy can then learn the consequences of their action before they act. (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 306, quoting *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 798.) While an insurer's statements disclaiming coverage may be couched in terms of denial, such a denial, when alleged in the pleadings or which precedes a promptly filed complaint for declaratory action, is not tantamount to repudiation of the policy obligations. (See *Miller v. Shugart* (Minn. 1982), 316 N.W.2d 729.) A contrary conclusion would negate the protections for which the declaratory judgment action is designed and ultimately penalize insurers for conduct which we have previously sanctioned as proper. See *Murphy v. Urso* (1981), 88 Ill. 2d 444; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469. *Cf. Ayres v. Bituminous Insurance Co.* (1981), 100 Ill. App. 3d 33; see also *Insurance Co. v. Markogiannakis* (1989), 188 Ill. App. 3d 643 (insurer that expressly denied coverage and subsequently filed declaratory judgment action not estopped to raise coverage defense).

Further, our review of the record reveals three letters (May 7, 13, and 19, 1986) from insurers addressed to insureds concerning the Miller litigation. We construe these letters as constituting a reservation of insurers' rights. Of particular significance is the May 7 letter, wherein insurers reference an earlier letter to insureds in which insurers allegedly stated that they had "originally communicated their reservation of the EIL Policy's response." The May 7 letter also states that insurers' "response not to contest the settlement amount was being made without prejudice of the Underwriter's continued evaluation of this matter and to their application of defenses to coverage and other options available under the Policy and the law if in fact the continued evaluation indicates the propriety of such contentions as may or

may not exist to coverage defenses." In none of the three letters do insurers deny coverage, but instead, indicate continuing evaluation and concerns about defense coverage.

Here, insurers indicated their concerns about coverage, proceeded to evaluate insureds' claims under an express reservation of rights, and subsequently sought a declaratory judgment. By their conduct insurers have demonstrated no intent to abandon insureds. We conclude that on these facts, insurers' "denial" of coverage does not amount to a repudiation of the insurance contract.

Insureds further assert that courts have previously held that an insured need not comply with contract terms once the insurer has "breached the contract or denies coverage." In support of this contention they invite our attention to the following cases: *Mayfair Construction Co. v. Security Insurance Co.* (1977), 51 Ill. App. 3d 588; *Crest v. State Farm Mutual Automobile Insurance Co.* (1974), 20 Ill. App. 3d 382; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184; *Luria Brothers & Co. v. Alliance Assurance Co.* (2d Cir. 1986), 780 F.2d 1082.

In each of these cases the insurers wrongfully denied coverage, and without resort to the courts for a declaration of their rights and obligations under the terms of the insurance agreements, totally abandoned their insureds. In that regard, the cases are distinguishable from the case now before us. In each case, though perhaps not expressly stated, the insurers were estopped from asserting coverage defenses.

The estoppel principle, properly stated, provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy which includes a duty to defend may not simply refuse to defend the insured. Such insurer must defend the suit

under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, and is subsequently found to have wrongfully denied coverage, it is estopped from later raising policy defenses to coverage. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184.) The rule is likewise applicable to cases where the insurer's duty is to indemnify. *Cf. United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1989), 193 Ill. App. 3d 1087 (declaratory judgment action to determine duty to indemnify brought prior to determination of insured's liability is premature); see also *Auto-Owners Insurance Co. v. Milwaukee Mutual Insurance Co.* (1987), 165 Ill. App. 3d 734; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150.

Other than insureds' assertion, there has been no determination that insurers have breached the contract. It is significant that insurers have not completely abandoned insureds; they instead reserved their rights and seek a declaration that there is no coverage. The estoppel rule has no application in the context of this declaratory judgment action; insureds' attempted invocation of it at this juncture is premature. We express no opinion as to its later availability.

We note that as a practical matter, since the parties are adverse for purposes of the declaratory judgment proceedings, each may have suspended performance of their contractual obligations. However, the fact that the request for the defense litigation files now arises in the context of discovery during a declaratory judgment action neither narrows nor extinguishes the contractual obligations of the parties. The contractual duties are continuing.

Further, we caution that a party who fails to perform his contractual obligations, because he believes the other

party to be in breach, does so at his own peril. In making this determination we are mindful that where an insurer erroneously believes that there is no coverage and therefore wrongfully denies a claim, it may be estopped to assert the insured's lack of performance in defense and may, in addition, be liable for damages. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144-45.) It seems to us a correct corollary that where an insured, because he believes that the insurer is in breach, fails to perform his contractual duties and there is a subsequent finding to the contrary, the insured risks losing the benefit of his bargain.

Insureds next argue that this court's opinion should make it clear that the common interest doctrine ceases to apply when the parties become adverse. It is their contention that, here, the parties became adverse at the point when insurers "denied" coverage.

While we agree with the soundness of the general proposition, it is of no avail to insureds. It is essential to note that, until there is a declaration to the contrary, insurers continue to bear potential responsibility for settlement and litigation costs in the underlying action. The underlying defense litigation documents were generated in anticipation of minimizing liability, an interest common to both insurers and insureds. As we have previously stated, these documents may enjoy privileged status as to party opponents in the underlying litigation, but they cannot be privileged from insurers who may bear the ultimate burden of payment. While the parties are now adverse concerning the issue of coverage, no such adversity exists as to the underlying litigation. See *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.* (D.D.C. 1986), 654 F. Supp. 1334.

Finally, insureds assert that this court's opinion should be modified to provide that the work-product materials need not be produced until coverage is admitted or established. We do agree with insureds that, as a

threshold matter, the parties should seek a determination that the *site* is covered prior to proceeding with production of the defense litigation files. However, to require an admission as to other issues of coverage ignores the very purpose of the declaratory judgment action.

We continue to hold that on these facts insureds may not assert against insurers either the attorney-client privilege or the work-product doctrine as a bar to discovery.