[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR A PROTECTIVE ORDER AND TO QUASH #111
The plaintiff objects to and moves to quash the defendants' subpoena duces tecum; and the plaintiff moves for a protective order prohibiting the defendants from deposing its counsel.
The plaintiff, state of Connecticut ("state"), acting through its Department of Transportation ("DOT"), brought this action against the defendants, Steinman Boynton Gronquist Birdsall, Inc. ("Steinman, Inc.") and the partnership of Steinman Boynton Gronquist Birdsall ("Steinman"), seeking indemnification for payments it made as a result of alleged acts and omissions committed by the defendants. Presently before the court is the state's objection to and motion to quash the subpoena duces tecum served on its attorney, Timothy S. Fisher, which was filed on November 18, 1997, with a supporting memorandum. The state has also moved for an order prohibiting the defendants from taking the deposition of its attorney. On November 24, 1997, the defendants filed a memorandum in opposition. Supplemental memoranda were subsequently filed by the parties.
This case arises out of the design and construction of the Charter Oak Bridge. In its amended complaint, the state alleges the following facts. In 1988, the state, acting through its DOT, chose Steinman to be the designer of the bridge and its approaches. (Complaint, count I, ¶¶ 3 and 4.) The state also entered into a separate agreement with Steinman, Inc., which governed among other things, the inspection of the bridge while was under construction. (Complaint, count II, ¶ 40.) The contracts provided that Steinman and Steinman, Inc., would obtain insurance and indemnify the state for claims arising out of the negligent acts, errors and omissions in the work performed. (Complaint, count I, ¶¶ 6-11; count II, ¶¶ 41-42.)
Thereafter, the state awarded the construction contract, CT Page 6604 which included Steinman's drawings, to a joint venture of Morrison-Knudson Corporation and the White Oak Corporation ("the contractor"). (Complaint, count I, ¶ 14.) The contractor submitted claims to the state for damages caused by Steinman's alleged errors, omissions and delays. (Complaint, count I, ¶ 30; count III, ¶ 74). The contractor also submitted claims to the state for damages caused by Steinman, Inc.'s alleged errors, acts and omissions. (Complaint, count II, ¶¶ 49 and 54.) The state put both Steinman and Steinman, Inc. on notice that it intended to seek indemnification for any losses, including attorney fees and costs, resulting from those claims. (Complaint, count I, ¶ 32; count II, ¶ 56; count III, ¶ 78.)
The state retained Attorney Fisher to represent them in connection with the claims submitted by the contractor. (Fisher Affidavit, ¶ 3.) In his role as attorney for the state, Attorney Fisher solicited information and documentation which he deemed to be material to the case. Id., ¶ 4. In addition, documents were prepared by Attorney Fisher as well as by experts and consultants retained to assist in the defense of the underlying claims. Id.
On or about November 4, 1997, the defendants issued a subpoena duces tecum commanding Attorney Fisher to appear at the offices of their attorneys so they could depose him in connection with the present case. Attorney Fisher was further commanded to bring with him and produce any and all notes, memoranda, correspondence and other documents in his files relating to the present case and relating to his representation of the state in connection with the underlying claims submitted by the contractor. (Subpoena Duces Tecum and Schedule A to the Notice of Deposition.) Thereafter, the state objected to and moved to quash the subpoena duces tecum, and moved for an order prohibiting the defendants from taking the deposition of its counsel, Attorney Fisher.
A party from whom discovery is sought, may move the court for a protective order from oppressive, annoying, or embarrassing discovery requests, or discovery requests which cause an undue burden upon the moving party. Practice Book § 221, now Practice Book (1998 Rev.) § 13-5. "The extent of discovery and use of protective orders is clearly within the discretion of the trial judge." (Internal quotation marks omitted.) Tyler v. Schnabel, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516561 (Nov. 16, 1994, Spada, J.). CT Page 6605
The state has moved for a protective order prohibiting the defendants from deposing its counsel. In its memorandum, the state contends that the testimony and documentation sought is protected by the attorney-client privilege. The state further contends that the documentation sought is also protected by the attorney work product doctrine. The defendants contend that in his defense and settlement of the contractors claims, Attorney Fisher represented the "common interests" of the state, Steinman and Steinman, Inc., and therefore, the attorney-client privilege and the work product doctrine are inapplicable in this action. The state, however, contends that its interest and that of the defendants were always adverse, that they never shared counsel, and that the parties were always represented by separate counsel.
The defendants rely on paragraph 34 of the first count in the state's complaint which provides in pertinent part: "Steinman agreed that it was in its interests that the state defend Steinman's position in the dispute resolution process and that Steinman not be forced to participate directly in the mediation of the Contractor's claim." The defendants further rely on a letter dated June 2, 1995, written by Attorney Fisher and addressed to their attorney, William J. Postner, which states: "The DOT and Steinman agreed that it was in their mutual interests that the DOT defend Steinman's position in this dispute resolution process and that Steinman not be forced to participate directly in the mediation. We may suggest the same arrangement in the litigation or arbitration yet to come. Both Steinman and the DOT desire that Steinman, like other consultants, feel secure that the DOT will protect its interests in Connecticut. This arrangement also maintains a `united front' in this dispute which minimizes the contractor's opportunity to exploit issues between ou[r] clients." (Defendants' Supplemental Memorandum of Law dated December 5, 1997, Exhibit A, p. 3.) According to the defendants, the state, in these two documents, acknowledges that Attorney Fisher was not only representing the state's claim, but was also defending their position.
The defendants cite Carrier Corp v. Home Insurance Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 352383 (June 12, 1992) (Schaller, J.) (6 CONN. L. RPTR. 478,7 CSCR 823), Waste Management. Inc. v. International Surplus Lines,579 N.E.2d 322, 144 Ill.2d 178 (1991), and other similar cases to support their contention that the parties had a "common interest" in the underlying claims brought by the contractor, but those cases are CT Page 6606 distinguishable.
The "common interest" doctrine, as set forth in a seminal case, provides that "when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. . . . This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer." (citations omitted.)Waste Management, Inc. v. International Surplus Lines,supra, 579 N.E.2d 328.
The facts of the present case, however, distinguish it fromCarrier, Waste Management and the other "common interest" cases cited by the defendants, which dealt with contracts of insurance. In the present case, the state is seeking indemnification pursuant to contractual provisions in design and inspection contracts. Contracts of insurance and contracts with indemnity provisions are not the same Jur.2d, Indemnity § 4 (1995). In a contract with indemnity provision, the indemnity is not the essence agreement creating the transaction or relationship between the parties. With insurance contracts, however, the sole purpose of the relationship between the parties is the indemnity aspect. Id. Furthermore, in direct contrast to a typical contract of insurance which provides that the insurer (indemnitor) will indemnify the insured (indemnitee damages resulting from the insured's negligence, the present contracts call for indemnification of the state for damages arising out of the defendant indemnitors' negligent errors and omissions.
In addition, "the rationale which supports the `common interest' exception to the attorney-client privilege simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials." (Internal quotation marks omitted.)Remington Arms Co. v. Liberty Mutual Insurance Co.,142 F.R.D. 408, 418 (D. De. 1992) (attempting to predict how Connecticut state courts apply the common interest doctrine). In the present case state put the defendants on notice that it intended to indemnification for any losses, including attorney fee costs, resulting from the underlying claims. As a direct result, the defendants retained Attorney William J. Postner. The state and the defendants may have agreed to cooperate with each other during the mediation of the underlying claims in order to reduce defense costs and to maintain a "united front" against a common CT Page 6607 adversary. Nevertheless, the defendants were represented by their own counsel, Attorney Postner, at all times during the litigation of the underlying claims. Attorney Fisher was representing the state, not the defendants, in the underlying litigation. See also Fisher Affidavit, ¶ 7.
Finally, "[t]he [common interest] doctrine should not apply where the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by [the parties]." (Internal quotation marks omitted.)Remington Arms Co. v. Liberty Mutual Insurance Co.,supra, 142 F.R.D. 418. The defendants' contention that the parties had an identical interest in defending against the contractor's underlying claims is somewhat misleading. Even if the state and the defendants shared a desire to minimize if the contractor's underlying claims, "the parties did not then and do not now share an interest in characterizing how that damage occurred, what type of damage occurred, or how [the defendants] responded to the damage[s]." Id. The state had and continues to have an interest in demonstrating that any damages it is liable for arose out of the defendants' negligent acts, errors and omissions. Conversely, the defendants had and continue to have an interest in demonstrating that damages resulted from anything other than their negligent acts, errors and omissions.
In conclusion, the parties in the present case did not have a common interest in the underlying claims, and therefore, the attorney-client privilege and the work product doctrine are applicable in this action.
"Communications protected by the attorney-client privilege are not discoverable." Tunick v. Day, Berry Howard,40 Conn. Sup. 216, 218, 486 A.2d 1147 (1984). "The burden of proving facts essential to the privilege is on the person asserting it." Id., 219, citing State v. Hanna,150 Conn. 457, 466, 191 A.2d 124 (1963). The basic principles of the attorney-client privilege are undisputed. "Communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice." State v. Burak,201 Conn. 517, 527, 518 A.2d 639 (1986). "Where legal advice of any kind is sought from a professional legal adviser, in his capacity as such, the communications relating to that purpose, mace in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." (Internal quotation marks omitted.)Rienzo v. Santangelo, 160 Conn. 391, 395, 279 A.2d 565 (1971). CT Page 6608
In the present case, credible evidence demonstrates that the state retained Attorney Fisher to represent it in connection with the claims submitted by the contractor. For the purpose of obtaining legal advice regarding the underlying claims, the state had confidential communications with Attorney Fisher in his capacity as an attorney. The state has not waived the attorney-client privilege and is insisting that the confidential communications be protected from disclosure. Therefore, the attorney-client privilege protects the confidential communications sought in the subpoena duces tecum and Schedule A to the notice of deposition from being disclosed.
The work product doctrine is codified in Practice Book § 219, now Practice Book (1998 Rev.) § 13-3 (a), which provides, "a party may obtain discovery of documents and tangible things otherwise discoverable under Section 13-2 and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the judicial authority shall not order disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. "
In the present case, after the contractor submitted its claims to the state for damages caused by the defendants' alleged errors, the state retained Attorney Fisher and put the defendants on notice that it intended to seek indemnification for any losses, including attorney fees and costs, resulting from those claims. Thus, many of the documents sought in the subpoena duces tecum and Schedule A to the notice of deposition appear to have been prepared in anticipation of litigation.
The facts of the present case are substantially similar to the facts in Tyler v. Schnabel, supra, Superior Court, Docket No. 516561. In Tyler, Judge Spada addressed the issue of whether, under the attendant circumstances, the defendants could depose the plaintiff's attorney. The defendants asserted that they were seeking non-privileged information which would lead to relevant evidence. Judge Spada granted the plaintiff's motion for a protective order and overruled the defendants' objection to the protective order. Reasoning that the CT Page 6609 defendants had failed to demonstrate that they would suffer undue hardship if required to obtain the information from other sources, Judge Spada wrote: "The deposition of opposing counsel must be discouraged and disallowed except under the most compelling reasons. Such a procedure could lead to calling opposing counsel to testify, placing in jeopardy a plaintiff's right to have his designated counsel represent him before our courts."
The defendants in the present case, like the defendants inTyler, have failed to demonstrate that they have a substantial need for such materials and that they are unable to obtain the substantial equivalent thereof without undue hardship. In fact, the defendants have already requested the non-privileged documents sought in the subpoena duces tecum in its request for production of documents directed to the state. Therefore, the defendants are prohibited, from taking the deposition of the state's counsel, Attorney Fisher.
In summary, the state's objection to and motion to quash the subpoena duces tecum, and the state's motion for a protective order prohibiting the defendants from deposing its counsel are granted, and the defendants' objections to those motions are overruled.
HENNESSEY, J.