Connolly, J.
Defendant, the Travelers Indemnity Company (“Travelers”), moves this Court to enter an Order compelling non-party witness, Shield Packaging Company, Inc. (“Shield”), to produce for inspection and copying: (1) two versions of an investigative report, including attachments and illustrative maps, and (2) file memoranda memorializing interviews with two Shield employees. Shield asserts that the documents at issue are not discoverable because they are subject to the attorney-client privilege and the work product doctrine.
For the reasons stated below, Travelers’s motion is DENIED.
BACKGROUND
The Dedham-Westwood Water District (the “District”), as assignee of Shield’s[2] insurers has brought an environmental insurance coverage declaratory judgment action against defendants, including Travelers, for damages related to the contamination of the White Lodge Well Field (“Well Field”) located in West-wood, Massachusetts.[3]
The District discovered that two of its wells were contaminated with volatile organic compounds in 1979. In 1982, the District sued Cumberland Farms, Inc. (“Cumberland”) as the parly responsible for the groundwater contamination seeking costs and damages. This litigation lasted for approximately ten years; however, the District was ultimately unable to establish its claims against Cumberland.[4] In 1988 a federal district court judge, Judge Tauro, found that Shield and the Massachusetts Water Resource Authority (“MWRA”) were the likely culpable parties rather than Cumberland.
In 1990, the District instituted a lawsuit against Shield and the MWRA (the “Underlying Cases”) alleging that they were responsible for the contamination of the Well Field. Simultaneously, the Massachusetts Department of Environmental Protection (“DEP”) issued a Notice of Responsibility (“NOR")[5] to Shield requiring it to conduct various environmental site assessments and remedial actions.[6] This process, conducted under the Massachusetts Contingency Plan (“MCP”), continues to this day. Shield hired outside counsel, Nutter, McClennen & Fish, LLP (“Nutter”), and environmental consultants, Rizzo Associates, Inc. (“Rizzo”), to defend the litigation and undertake the MCP. Shield turned to its insurers to seek defense and indemnification; however, none of its primary carriers — the National Union Fire Insurance Company of Pittsburgh, PA, Travelers, or Commerce & Industry Insurance Company — was willing to assume the full defense of Shield in the environmental claims. In late 1991, Shield and the District began settlement discussions and consummated a settlement. The parties entered into a Memorandum of Agreement (the “Memorandum”) and filed an Agreement for Consent Judgment on January 15,1992. The Memorandum provided that:
1. For purposes of the Agreement, Shield’s share of the District’s actual damages resulting from the contamination of the Well Field would be $9,000,000;
2. Shield and the District would file with the Federal District Court an Agreement for Consent Judgment in the amount of $9,000,000;
3. Shield would pay the District the total sum of $750,000 over a seven-year period;
4. With the exception of the amount specifically agreed to be paid by Shield to the District, the District agreed not to execute against or enforce the Judgment entered pursuant to the Agreement for Consent Judgment;
5. The agreed upon $9,000,000 Judgment was not intended to determine, adjudicate or operate as an admission of Shield’s liability, or any fact relevant thereto, with respect to any other proceedings with the District or with respect to any other party; and
6. Shield would assign to the District its entire right, title and interest in various policies of insurance, insofar as said policies may provide coverage for the claims asserted by the District in the Underlying Cases.
A Final Decree was entered by the Court on March 18, 1993. The Final Decree resulted in a complete dismissal of the Underlying Cases.[7]
The District filed this case on January 10, 1996 against various insurance companies in connection with the clean-up of the alleged environmental contamination at Well Field. The District claims that it is entitled, as an assignee, to coverage under liability insurance policies to Shield.
*212 DISCUSSION
I. Work Product Doctrine and Attorney-Client Privilege
Travelers moves this Court to enter an Order compelling Shield to produce for inspection and copying: (1) two versions of an investigative report, including attachments and illustrative maps, and (2) file mem-oranda memorializing interviews with two Shield employees. However, Shield has refused to produce the documents claiming that they are not discoverable pursuant to the attorney-client privilege and/or the work product doctrine. The requested documents are addressed below individually.
A. Investigative Reports
There were two investigative reports prepared by Shield. The first version of the investigative report was prepared by Louis A. Sgarzi (“Sgarzi”), Shield’s Vice President and Corporate Counsel.[8] This report includes information regarding “Shield’s operations; the history of use of 1 -1 -1 trichloroethane at Shield; and groundwater concerns.” Although this information may be relevant to the District’s claim that the insurers’ policies cover Shield’s environmental liability at the Well Field, the report is nonetheless not discoverable under the work product doctrine.
Pursuant to Massachusetts Rule of Civil Procedure 26(b)(3), a document may constitute “work product” if it is prepared “in anticipation of litigation ... by or for another party or by or for that other party’s representative.” See Mass.R.Civ.P. 26 (b)(3). The protection of attorney work product material is designed to protect the mental impressions and thought processes of attorneys. See Hickman v. Taylor, 329 U.S. 495, 511-12 (1947). It is likely that Sgarzi created the first version of the report because Shield anticipated litigation after Judge Tauro’s opinion in Dedham Water Co. v. Cumberland Farms, 689 F.Sup. 1223, 1235 (D.Mass. 1988).[9]
Unlike as Travelers asserts, for a document to be covered under the work product doctrine, it is not necessary that litigation be pending at the time the document is created. The work product doctrine only requires that litigation be reasonably anticipated in the near future. See Atlantic Fin. Management Sec. Litig., 121 F.R.D. 141 (D.Mass. 1988).[10] Therefore, Shield does not have to demonstrate that the District actually threatened litigation at the time the investigative report was prepared and it is irrelevant that it was not until two years after Judge Tauro’s decision that the District sued Shield.
Shield was aware that the District filed a lawsuit against Cumberland Farms. As a matter of fact, the president of Shield, George Bates (“Bates”), had been called on to testify at such trial. Shield was also aware of the comments made by Judge Tauro in 1988. Additionally, DEP was conducting an investigation of the contamination that was focused on Shield. Accordingly, Sgarzi prepared the investigative report because Shield reasonably anticipated that it might be sued by the District, that the DEP may commence legal proceedings against it,[11] and finally, that it might be forced to sue its insurance companies in order to obtain defense and indemnification for those matters.
Similarly, the second version of the investigative report,[12] prepared by Attorney Mary Ryan (“Attorney Ryan”), a partner at the law firm of Nutter, is protected from discovery because it is attorney work product prepared in anticipation of litigation.
The changes and alterations to the first version of the report were made by Attorney Ryan on or about November 18, 1989, in an effort to provide Rizzo with sufficient information to allow them to serve as environmental consultants and as litigation consultants in future anticipated litigation. Disclosure to Rizzo does not waive the work product privilege because Rizzo was specifically retained as a consultant and any documents created “by or for” a consultant are shielded from discovery. Mass.R.Civ.P. 26(b)(3). The report was transmitted to Richard J. Hugh, the Vice President of Rizzo, by letter on November 18, 1989. The letter indicated that the investigative report was confidential work product prepared by Shield being provided to him for use in connection with the defense of the anticipated litigation concerning the District.
The two investigative reports are also shielded from discovery pursuant to the attorney-client privilege. The attorney-client privilege attaches to any communication made between an attorney and client in confidence, for the purpose of seeking, obtaining or providing legal advice or assistance. In Re Reorganization of Electric Mut. Liability Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421 (1997). These reports were confidentially[13] prepared with the expectation that it would be turned over to outside counsel for the purpose of obtaining legal advice.
It is irrelevant that the second report was edited by Attorney Ryan and then forwarded to Rizzo. Typically, the attorney-client privilege is waived when the privileged communications are revealed to a third party. In Re Reorganization of Electric Mut. Liability Ins. Co., Ltd. (Bermuda), 425 Mass. at 422. However, “disclosure to a third party who is identified with the party claiming the privilege and to whom disclosure is reasonable and necessary in order for all the facts to be made known to the attorney does not waive the privilege.” See Winchester Capital Management Co., Inc. v. Mfrs. Hanover Trust Co., 144 F.R.D. 170, 172 (D.Mass. 1992). The report was forwarded to Rizzo for the purpose of complying with the DEP NOR and for providing expert consultation for anticipated litigation.[14] Accordingly, the disclosure of privileged client communications to Rizzo does not waive the attorney-client privilege, and, therefore, both versions of the investigative reports are protected from production.
*213 B. Attachments to the Investigative Reports
Travelers claims that it is entitled to the discovery of the attachments to the aforementioned investigative reports. However, the attachments are also protected by the work product doctrine. See Mass.R.Civ.P. 26(b)(3). Sgarzi selected and compiled these attachments which, in his judgment, would assist counsel in preparation for Shield’s anticipated litigation. These compilations were intended to remain confidential; the report, along with its attachments were.only revealed to outside counsel and the company president. Therefore, the attachments are protected by the work product doctrine.
C. The Interview Memoranda
Travelers claims that it is entitled to a number of memoranda memorializing interviews that took place between two Shield employees[15] and representatives of Shield’s outside counsel, and Rizzo. The interviews constituted factual discussions relating to Shield’s manufacturing operations and waste disposal. The notes of these interviews conducted by counsel are protected from production under the work product doctrine. See Mass.R.Civ.P. 26(b)(3). These notes reflect the attorney’s mental impressions, thought processes and opinions. Additionally, at the time these notes were prepared Shield and its outside counsel were reasonably anticipating litigation. The interviews were primarily part of the ongoing process of gathering relevant information to enable Attorney Ryan and Rizzo to effectively counsel Shield in such anticipated litigation.
II. Substantial Need and the “At Issue” Doctrine
Travelers argues that even if Shield could establish that the investigative reports, the attachments, and the file memoranda are protected by the attorney-client privilege and/or the work product doctrine, they are nonetheless discoverable because the insurer has a substantial need for them and it is unable without undue hardship to obtain the substantial equivalent of the materials by other means. See Mass.R.Civ.P. 26(b)(3).
However, Travelers has failed to show that they have a “substantial need of the materials in the preparation of [their] case and . . . [that they are] unable without substantial hardship to obtain the substantial equivalent of the materials by other means.” Mass.R.Civ.P. 26(b)(3). Witnesses who have worked with Shield since the beginning of its operations, including Bates, Sgarzi, and Bruce Simpson, are still employed there and are available for depositions. Accordingly, since Travelers has not exhausted all other means of obtaining substantially equivalent materials, its motion is premature and, therefore, must fail.
Travelers also contends that Shield has waived any claim of privilege because it has placed such documents “at issue”[16] due to its conduct and the conduct of its attorneys in defending and settling the Underlying Cases and the question of whether and to what extent this claim is covered by the insurers’ policies.
The documents are not discoverable under the “at issue” doctrine. Travelers contends that even if the documents are privileged under the attorney-client privilege and/or work product doctrine, Shield waived these privileges pursuant to the “at issue” doctrine.[17] It argues that by placing the Underlying Cases and its insurance claims at issue, by virtue of its settlement and assignment of indemnity rights, Shield has waived any protection from discovery afforded by the attorney-client privilege or work product doctrine as against its insurers.
Travelers heavily relies on Waste Management, Inc. v. International Surplus Lines Ins. Co., 144 Ill.2d 178, 579 N.E.2d 322 (1991), in asserting that Shield waived its privileges via the “at issue” doctrine. However, Waste Management has been rejected or criticized on numerous occasions.[18] Shield’s entitlement to withhold documents based on the attorney-client privilege and work product immunity is not in any way compromised by the “at issue” doctrine. Neither Shield, by settling the Underlying Cases, nor the District, by bringing this suit for indemnity, has done anything to place the requested documents “at issue.”
The “at issue” doctrine is an exception to the attorney-client privilege and the work product doctrine which requires the production of otherwise protected material. Courts applying the “at issue” doctrine in the context of insurance coverage actions have held that insureds seeking coverage may not invoke the attorney-client privilege as a shield for discovery as to issues regarding the conduct of the insured or the insured's counsel where the conduct has been placed in issue via the insured’s claims. Hoechst Celanese Co. v. National Union Fire Ins. Co. of Pittsburgh, 623 A.2d 1118, 1125 (Del.Super. 1992).
“[A] court should begin its analysis with the presumption in favor of preserving the privilege." Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988). A court “cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant.” Remington Arms Co. v. Lib. Mutual Ins. Co., 142 F.R.D. 408, 415-16 (D.Del. 1992).
The “at issue” doctrine applies and a party waives its privileges when (1) by some affirmative act, (2) the party makes the protected information relevant to the case, and (3) the opposing party is thereby denied access to information vital[19] to its defense. Sax v. Sax, 136 F.R.D. 541, 542 (D.Mass. 1991); Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash. 1975). Information is “vital” only if the information is not available from any other source. See Hearn, 68 F.R.D. at 581; Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 701 (10th Cir. 1998). Since Travelers has failed to *214 show that the information cannot be secured from a less intrusive source, its motion must fail. See Pittson Co. v. Allianz Ins. Co., 143 F.R.D. 66, 71 (D.N.J. 1992), quoting In re Kozlov, 79 N.J. 232, 398 A.2d 882 (1979).
Accordingly, this Court finds that Travelers is not entitled to the privileged documents until it has exhausted all other discovery means of obtaining such information.
ORDER
For the foregoing reasons, the defendant’s motion to compel discovery production is hereby DENIED.

Shield is a closely held corporation which conducted manufacturing operations in Canton, Massachusetts from 1963 to 1982.

The District is seeking $9,000,000 of damages for breach of contract, a declaration that the defendants were obligated to indemnify Shield against the District's claims and are obligated to pay the District the amounts for which they were obligated to indemnify Shield, and damages under Chapters 93A and 176D.

See Dedham Water Co. v. Cumberland Farms, Inc., 689 F.Sup. 1223 (D.Mass. 1988); Dedham Water Co. v. Cumberland Farms Dairy, 889 F.2d 1146 (1st Cir. 1989); Dedham Water Co. v. Cumberland Farms Dairy, 770 F.Sup. 41 (D.Mass. 1991); Dedham Water Co. v. Cumberland Farms Dairy, 972 F.2d 453 (1st Cir. 1992).

The NOR advised Shield that information available to the DEP indicated that there was a release of hazardous materials at the Shield facility for which Shield is the responsible party.

The DEP proceeding is not at issue in the instant case.

Shield was the only party that contributed to the settlement which resolved the case.

This investigative report was prepared in 1989 and consisted of 29 pages along with attachments (including illustrative maps). It was transmitted to Nutter in March 1989 in connection with Nutter's retention as outside counsel.

Judge Tauro found that “Shield . . . [was a] probable continuing cause of the contamination . . ." Dedham Water Co., 689 F.Sup. at 1235.

The federal rule governing work product is identical to that promulgated in Massachusetts.

“Notices of responsibility issued by environmental government agencies can be "substantially equivalent to the commencement of a lawsuit." Hazen Paper Co. v. United States Fidelity and Guar. Co., 407 Mass. 689, 696 (1990).

The second version of the investigative report consisted of 19 pages and is basically an edited version of the first report.

The only people to whom the reports were disclosed were outside counsel and Bates.

In the letter in which Attorney Ryan forwarded this report to Rizzo she indicated that the report was work product prepared to be used in connection with the defense of anticipated litigation concerning the District. Attorney Ryan also indicated that the report was highly confidential.

The two employees consisted of a present employee, Bruce Simpson, and a former employee, Joe Pye, who was employed by Shield from August 1975 to September 1989.

For the applicability of the “at issue" doctrine, Travelers relies upon and incorporates the arguments put forth by Commercial Union Insurance Company in its Memorandum of law in Support of its Motion to Compel Production from third-party witness, Shield Packaging Company, Inc.

The “at issue" doctrine has not been addressed by the Massachusetts appellate courts. However, it has been adopted by the United States District Court for the District of Massachusetts. See Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269 (D.Mass. 1991); Sax v. Sax, 136 F.R.D. 541 (D. Mass. 1991).

See, e.g., Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc., 716 So.2d 340 (Fla.App.Ct. 1998); State Department of Transportation v. Steinman Boynton Gronquist & Birdsall, Inc., 22 Conn. L. Rptr. 233, 1998 WL 323251 (Conn.Super. 1998); Vermont Gas Systems, Inc. v. United States Fidelity Guar. Co., 151 F.R.D. 268 (D.Vt. 1993); In re Environmental Ins. Declaratory Judgment Actions, 612 A.2d 1338 (N.J.Super.Ct.App. 1993); Owens-Corning Fiberglass Corp. v. Allstate Ins. Co., 660 N.E.2d 765 (Ohio Ct.App. 1993).

A number of courts acknowledge the importance of the attorney-client privilege and the work product immunity and conclude that privileged information is "vital” only when a litigant directly places the attorney’s advice at issue in the litigation. See, e.g., North River Ins. Co. v. Philadelphia Reinsurance, 797 F.Sup. 363, 370 (D.N.J. 1992); State v. Hydrite Chem. Co., 582 N.W.2d 411, 418-19 (Wis.Ct.App. 1998); Aranson v. Schroeder, 671 A.2d 1023, 1030 (N.H. 1995).